UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED

2006 MAR 17  A 9:33

| | |
|---|---|
| SERGIO ORTIZ ALCANTARA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No.: 2:06cv245-WHA |
| ) | Related to Criminal Case No. |
| UNITED STATES OF AMERICA, ) | 2:03cr231-A |
| ) | |
| Respondent. ) | |

### MEMORANDUM OF LAW IN SUPPORT OF HABEAS CORPUS MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

### I. HISTORY OF THE CASE

On October 10, 2003, your petitioner was arrested and charged in the Middle District of Alabama with distribution and possession of scheduled drugs. R1-1. An indictment was issued on October 29, 2003, after a preliminary hearing which was had on October 15 whereby the petitioner was bound over to the Grand Jury and ordered detained. R1-42, 54. That indictment was superseded on January 1, 2002 by an indictment which charged the petitioner with conspiring to knowingly and intentionally distribute and possess with intent with intent to distribute, 500 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Id. A second count charged the petitioner with knowingly and intentionally possessing and distributing 500 grams of more of methamphetamine in violation of § 841(a)(1). Id.

A jury trial was held beginning on April 5, 2004, continuing

until April 7, whereupon the petitioner was convicted on both charges. The government called a witness in this matter, Sidney Brian Bradley to testify against petitioner for the purpose to link petitioner to the conspiracy with a prior drug dealt of methamphetamine where Bradley identified petitioner and assured that petitioner participated in a prior transaction involving drugs. [See Exhibit A]. Mr. Bradley testified as follows:

> Q. Would you describe the person who was with Mr. Lara on those two times that you've talked about Mr. Lara being accompanied by somebody else?
>
> A. He was a Mexican guy. He had black hair, tan skin.
>
> Q. Did you subsequently have occasion to point out this individual to anyone from law enforcement after you were arrested?
>
> A. Yes, sir.
>
> Q. Now, you said you had this second transaction with Mr. Lara, and I believe you said it was for, a pound and a half?
>
> A. Yes, sir.
>
> Q. Did you of Mr. Buckner make arrangements with Mr. Lara to receive other shipments in the future after you got pound-and-a half shipment?
>
> A. Yes, sir. Frank was discussing with Ryan, you know, that -- well, Ryan told him he wanted two pounds every two weeks. Frank was discussing, you know, to him about how they was going to get it over there and told him that the guy that was with him, him and a partner would probably be coming instead of Frank coming, because Frank wasn't going to be coming all the time.

[Tr. T. at pg. 126, attached hereto]. Regarding the identification in open court, Mr. Bradley only pointed out [indicating] as to what petitioner was wearing without any particular distinction to assured that was petitioner the same

person who was present in both transactions. Mr. Bradley testified as follows:

> Q. This person that you said was present on these transactions, his partner, as I believe you described him a moment ago --
>
> A. Yes, sir.
>
> Q. -- is he in the courtroom today?
>
> A. Yes, sir, he is.
>
> Q. Would you point out and describe what he's wearing?
>
> A. He's over there (indicating) wearing a white T-shirt.

[See Tr. T. at page 127, attached hereto].

However, after the jury's verdict, petitioner filed a Judgment for Motion of Acquittal which was denied. R1-183. Sentencing was held on June 23, 2004, and the petitioner was sentenced to 188 months in prison. Petitioner appealed to the Eleventh Circuit and his conviction and sentence was affirmed by unpublished decision on June 10, 2005. Subsequently, the Supreme Court denied a writ of certiorari.

## II. STATEMENT OF FACTS

Two aspects of this case are rather remarkable: one, the abject ineffectiveness of trial counsel for his failure to conduct a reasonable investigation into a co-defendant Gelacio Maturano Rodriguez; and second, by failing to call Rodriguez as a defense witness to confront the government's witness Mr. Bradley—the sole witness who identified petitioner as a participant in two prior drug transactions as part of the conspiracy. During cross examination, petitioner is described by Mr. Bradley as a Mexican.

3

Specifically, petitioner's counsel impeached Bradley's testimony at trial that there were two Hispanic males at the Montgomery county jail—which petitioner was not recognized by Bradley at that time—by demonstrating that on December 2, 2003, before trial, Bradley said that there at the Montgomery county jail he could not recognized petitioner and that he recognized petitioner to pleasant the government as part of the plea agrement and to have his sentence be reduced substantitally. The testimony came in as the following colloquy between Bradley and petitioner's counsel:

    Q. Is that an accurate statement?

    A. Yes, sir.

    Q. And did you in fact tell the police that the two Hispanic males were not the two in the Montgomery County Jail?

    A. I told by what I seen in Montgomery County Jail, that they weren't there.

    ....

    A. When I was in Montgomery City, there was more than just two Hispanics in Montgomery City.

    Q. But you did make a statement to the policy officers on or about December 2nd?

    A. I made a statement to them that -- saying I don't see the guy in Montgomery City.

    Q. So the police officer was wrong the way he wrote your statement?

    A. No, sir. He said that -- that I stated that I don't see the Mexican guy in the city. There were Mexican guys with me in the city that wasn't the guy.

[Tr. T. at page 137-38, attached hereto as Exhibit B].

During the course of his testimony, Bradley made an in-court identification of petitioner as one of the participants in prior

4

drug transactions. See Id. Petitioner's counsel's six questions on cross-examination merely elicited that Bradley could not recognized petitioner when they were together in Montgomery City Jail and that his identification testimony in-court was unreliable.

Next, petitioner advances that his trial counsel was ineffective because he failed to inform him of all possible plea options to resolve his criminal case and entitled him to a more favorable sentence. In this case, the District Court sentenced petitioner to concurrent 188-month sentence of imprisonment. Based upon an offense level of 34 (because of a drug amounts involved in the offense) and a criminal history category of I, petitioner's guideline offense level was 151 to 188 months imprisonment. Assuming that petitioner would have received a three-level reduction for acceptance of responsibility, he would have been subject to a guideline range of 135 to 168 months. Because petitioner was actually sentenced to 188 months imprisonment, he arguably received a sentence of 20 to 50 months greater than what he would have received had he entered on a plea agreemenmt to counts one and two.

The American Bar Association's standard on the precise question before this Court is simply stated in its Model Code of Professional Responsibility. Ethical consideration 7-7 (1992):

> A defense lawyer in a criminal case has the duty to advise his client fully on **whether a particular plea to a charge appears to be desirable.** (emphasis added).

Turning to the facts in petitioner's case, it would be impossible

5

to imagine a clearer case of a lawyer depriving a client of constitutionally required advice.

In addition, petitioner submits that counsel was ineffective for not prepare for sentencing and arguing sentencing issues which may have resulted in different sentence. Specifically, petitioner avers that his counsel was ineffective for failing to raise sentence reduction dispute that petitioner had minimal involvement in the conspiracy, [see Exhibit B, attached hereto]. Without it, a defendant has little hope of obtaining a reduced sentence.

Apart from substantial assistance to the government, the alternative bases for downward departure from the prescribed guideline range are largely limited to specific factual circumstances. See e.g. id. § 3B1.2 (minimal or minor participant in the crime); id. § 3E1.1 (acceptance of responsibility); id. § 5C1.2 (safety valve). In short, a mitigating role adjustment applies where the defendant was a "minor participant in any criminal activity." U.S.S.G. § 3B1.2(b).

While this adjustment itself is a modest two-level reduction in the offense level, id., if a narcotics defendant receives such an adjustment, the determination of minor participation has the further effect that the base offense level against which the adjustment is applied is itself reduced to no higher than 30. U.S.S.G. § 2D1.1(a)(3). As noted above, this makes a dramatic difference in a case such as this.

Lastly, after petitioner's conviction, a Presentence Investigation Report ("PSR") concluded that petitioner was responsible for 1700.2 grams of methamphetamine, which were

were transported to Montgomery County in October 2003, by relying on information from Gelacio Maturano Rodriguez. Petitioner's counsel made only general objections to this conclusion and did not call Rodriguez to the stand to challenge the officer Edwards' statements during sentencing. Agent Edwards testimony regarding drug quantity attributed to petitioner of the statements proffered by Mr. Rodriguez, while prejudicial to petitioner' case, was admitted into evidence as a result of poor preparation to sentencing by defense counsel.

 Here, pursuant to Mr. Rodriguez's—Maturano as referred by Agent Edwards—affidavit gathered by petitioner, clearly states that "I told him [Agent Edwards] that I brought down--besides the two pounds that the police found inside the vehicle, I had also given another half things--or two packages of the same cover but with a different amount of the big packages to another subject by the nickname of A.G." [See Maturano's Affidavit, attached hereto]. Thus, where the amounts were completely different as those testified by Agent Edwards, counsel plainly should have investigated prior to sentencing the statement provided by Mr. Rodriguez at the time of his arrest. As such, based upon the poor investigation prior to sentencing, likely resulted in an increase in petitioner's period of incarceration constituted ineffective assistance of counsel.

## III. ARGUMENTS

28 U.S.C. § 2255 requires a prisoner's sentencing court to release him or her if the prisoner's sentence was imposed in violation of the Constitution or laws of the United States, if the court was without jurisdiction to impose the sentence, if the sentence exceeded the maximum authorized by law, or if the sentence is otherwise subject to collateral attack. The statute provides that if the court finds for the prisoner, it may resentence him or her or set the conviction aside, as is appropriate.

### A. PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL

The constitutional standard for determining whether a criminal defendant has been denied the effective assistance of trial counsel, as guaranteed by the Sixth Amendment, was announced by the Supreme Court in **Strickland v. Washington**, 104 S.Ct. 2052, 2064 (1984):

> A convicted defendant's claim that counsel's ineffective assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

To satisfy the first prong of **Strickland**, i.e., establish his counsel's performance was constitutionally deficient, a

convicted defendant must show counsel's representation "fell below an objective standard of reasonableness." **Wiggins v. Smith**, 123 S.Ct. 2527, 2535 (2003); **Williams v. Taylor**, 120 S.Ct. 1495, 1511 (2000). In so doing a convicted defendant must carry the burden of proof and overcome a strong presumption the conduct of his trial counsel falls within a wide range of reasonable professional assistance. **Strickland**, 104 S.Ct. at 2064-06.

Courts are extremely deferential in scrutinizing the performance of counsel and make every effort to eliminate the distorting effects of hindsight. See **Wiggins**, 123 S.Ct. at 2536 (holding the proper analysis under the first prong of **Strickland** is an objective review of the reasonableness of counsel's performance under prevailing professional norms which includes a context-dependent consideration of the challenged conduct as seen from the perspective of said counsel at the time). It is strongly presumed counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. **Strickland**, 104 S.Ct. at 2066.

To satisfy the "prejudice" prong, a convicted defendant must establish a reasonable probability that, but for the objective unreasoanble misconduct of his counsel, the result of the proceeding would have been different. **Wiggins**, 123 S.Ct. at 2542; **Strickland**, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding. **Wiggins**, 123 S.Ct. at 2542; **Strickland**, 104 S.Ct. at 2068.

1. **Identification Testimony in General**

Identification testimony is at once the "least reliable" form of evidence but "among the most influential" to a jury. **Kampshoff v. Smith**, 698 F.2d 581, 587 (2nd Cir. 1983). Courts have consistently viewed convictions built upon uncorroborated eyewitness identification with skepticism. See e.g., id. at 585-86 ("the experience of law and psychology has been that eyewitness testimony may sometimes be the least trustworthy means to identify the guilty.... Forensic science has ... thoroughly impeached the reliability of eyewitness identification."); **Jackson v. Fogg**, 589 F.2d 108, 112 (2nd Cir. 1978)(testimony of eyewitness were unsupported by corroborating evidence"); **Phan v. Greiner**, 165 F.Supp. 385, 398 (E.D.N.Y. 2001)(identification testimony "of a single eyewitness to whom petitioner [is] a stranger" is "notoriously unreliable, and is alone sufficient to undermine confidence in [a] verict"). See also Jon O. Newman, The Madison Lecture: **Beyond "reasonable doubt,"** 68 N.Y.U. L.Rev. 979, 999 (1993)(arguing that uncorroborated eyewitness identification should be insifficient to sustain a conviction).

Furthermore, when the identification, as here, is cross-racial, it is "much less likely to be accurate than same race identifications." **Arizona v. Youngblood**, 488 U.S. 51, 72 n. 8 (1988)(Blackmun J., dissenting). See also Radha Natrajan, Note, **Racialized Memory and Reliability: Due Process Applied to Cross-Racial Eyewitness Identifications**, 78 N.Y.U. L.Rev. 1821 (2003)(surveying studies showing cross-racial identifications

substantially more likely to be erroneous than same-race identifications due to the psychological phenomena of own-race bias, and arguing that due process requires an alternative test for the admissibility of cross-racial identifications).

### A. Petitioner's Counsel's Deficient Performance

The failure of petitioner's counsel to conduct a reasonable investigation into a co-defendant "Maturano" and by failing to call "Maturano" as a defense witness to confront the government's witness Mr. Bradley was symple inexcusable. A more compelling example of ineffective representation is difficult to fathom. Consistent with **Wiggins**, courts have held, in a variety of situations, that counsel's failure to investigate constituted ineffective assistance of counsel in violation of the Sixth Amendment. See e.g., **Blackburn v. Foltz**, 828 F.2d 1177, 1183 (6th 1987)(holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did even make a reasoned professional judgment that for some reason investigation was not necessary"); see also **Clinkscale v. Carter**, 375 F.3d 430, 443 (6th Cir. 2004)(collecting cases in which counsel's failure to investigate a potentially important witness constituted ineffective assistance).

As in the foregoing cases, petitioner's trial counsel's failure to conduct a reasonable investigation into "Maturano,"

"a known and potentially important witness," **Blackburn**, 828 F.2d at 1183, violated petitioner's Sixth Amendment right to the effective assistance of counsel. As noted, Gelacio Maturano Rodriguez's affidavit states that "on one of those trips that I made it to Montgomery I accompanied Frank Lara to met a couple of individuals for the purpose to made a controlled substance transaction, namely methamphetamine." [See Affidavit at pg. 1, ¶ 2, attached hereto]. That during the meeting Frank Lara discussed the sale of four ounces of methamphetamine with those individuals. See Affidavit at ¶ 3. The affidavit further states: "I invited my co-defendant in this case Sergio Ortiz Alcantara to be my accompanying to pick it up a car in North Carolina. But I explained to him that before I had been crossing to North Carolina I need to make an stop in Montgomery. That only me knew the purpose for the stop on that town." See Affidavit at ¶ 4.

Finally, the affidavit confirms that on October 7, 2003 [when petitioner was arrested] it was the first time that Mr. Sergio Ortiz Alcantara visited Montgomery, Alabama. As stated above, he did not know of the purpose for the stop in Montgomery. See Affidavit ¶ 5. In addition to "Maturano's" affidavit the record contains other evidence—specifically, the Bradley's testimony on cross-examination—that provides some indication of the facts to which "Maturano" might have testified if called as a defense witness. As it was, petitioner's only meaningful defense—for which no evidence other than to try to impeach Bradley—was that he could not have committed the crimes as charged because he was never present at any meeting where drug transactions were

discussed and that he did never met Bradley. The fact that Bradley's testimony goes without any challenged certainly must have significantly affected the jury's assessment of petitioner's guilt.

Petitioner has successfully satisfied both the deficiency and prejudice prongs of **Strickland**. With regard to the deficiency prong, the facts as recited above demonstrate that counsel made absolutely no attempt to communicate with "Maturano," despite requesting by petitioner and that he been kept in the county jail so that he could interview him prior to the commencement of the trial. Without even attempting to interview "Maturano," counsel simply decided not to call him as a witness. That decision was objectively unreasonable because it "was adecision made without undertaking a full investigation" into whether "Maturano" could assist in petitioner's defense. **Combs v. Coyle**, 205 F.3d 269, 288 (6th Cir. 2000).

By failing even to contact "Maturano"—despite explicitly acknowledging the need to do so—counsel "abandoned his investigation at an unreasonable juncture, making a fully informed decision with respect to [whether to call "Maturano" as a witness] impossible." **Wiggins**, 539 U.S. at 527-28.

With regard to **Strickland**'s prejudice prong, the record contains ample evidence indicating that but for counsel's ineffectiveness, there is a reasonable probability that petitioner would have been acquitted. "Maturano" has consistently maintained to the police and to others that petitioner was not involved in the crimes for which he was convicted, and that he ("Maturano")

13

had willing to testify to that effect of petitioner's trial. Had counsel interviewed "Maturano," he would have discovered as much and probably would have him on the stand—depending in part upon what other information counsel's investigation uncovered. In short there is a reasonable probability that had the jury heard "Maturano's" testimony, it would have acquitted petitioner.

Petitioner submission of prejudice is further supported by the notable weaknesses in the prosecution's case. The Supreme Court has explained that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors that one with overwhelming record support." **Strickland**, 466 U.S. at 696; **Clinkscale**, 375 F.3d at 445. The only evidence linking petitioner to the conspiracy was the cooperating witness of Bradley. Courts has repeatedly expressed the "grave reservations concerning the reliability of eyewitness testimony," **Clinkscale**, 375 F.3d at 445 (quoting **Blackburn**, 828 F.2d at 1186 (citation omitted), and Bradley's identification of petitioner in this case ["He was a mexican guy, black hair, tan skin] was particularly shaky.

As discussed, that identification of petitioner was admittedly tentative and was based solely on petitioner's nacionality, hair and color of skin, which were equivalent to those of "Maturano," who apparently never was included in any lineup. In light of the relatively scant evidence of petitioner's guilt, his counsel's ineffectiveness must be deemed especially prejudicial.

## 2. Minor Role Departure

Petitioner also submits that his counsel was deficient for failing to argue during sentencing for a minor role reduction pursuant to U.S.S.G. § 3B1.2, in light of the government's position during trial proffer that petitioner played a role as a courier in Lara's organization. [See Exhibit D, attached hereto]. Whatever petitioner actually did, what he was <u>caught</u> doing was limited to participating as a passenger in a vehicle where "Maturano" transported drugs. Section 3B1.2 provides for reduction of two levels where the defendant was a minor participant in the criminal activity charged.

As the commentary notes, "[t]his section provides a range of adjustment for a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant." The application notes further explain that "[i]f a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted because such defendant is not substantially less culpable than a defendant whose only conduct involved the less serious offense." App. note 4. See **United States v. Soto**, 132 F.3d 56, 58-59 (D.C. Cir. 1997)(counsel's failure to request downward sentence adjustment under Sentencing Guidelines provision for minimal or minor participation rendered assistance constitutionally ineffective).

Petitioner emphasizes that he was a mere courier—as pointed

15

out by the prosecutor during trial—and that § 3B1.2 explicitly employs the xample of "a defendant who is convicted of a drug trafficking offense, whose role in that offense was limited to <u>transporting</u> or storing drugs." U.S.S.G. § 3B1.2 cmt. 3(A) (emphasis added). Petitioner also points out that he had virtually no prior knowledge of or other relationship to the drug conspiracy, nor even of the type or quantity of drugs that were transporting on October 7, 2003, and that he was accompanying "Maturano" to pick it up a car on North Carolina. [See Maturano's Affidavit, attached hereto].

Had counsel argued at sentencing the minor role adjustment, if agreed by the court, the sentence proceeding would have been different. By awarding petitioner a "minor participation" adjustment, the Court triggers a separate level at 30, instead of the otherwise applicable 34. See U.S.S.G. § 2D1.1(a)(3). Accordingly, the cumulative effect of these provisions is that petitioner's adjusted offense level would have been reduced two levels to 28. Petitioner's guideline range would have been reduced from 151-188 months to 78-97 months—arguably at least 120 months for the minimum mandatory under § 841(b)(1)(A). Petitioner was sentenced to 188 months—sixty-eight months longer than the minimum mandatory had counsel raised the proper objection during sentencing. Therefore, the alleged error here did result in a specific, demonstrable increase in sentencing due counsel's omissions, and petitioner suffered prejudice because of it.

3.  **Ineffective Assistance of Counsel At Sentencing For Failure to Investigate The "Maturano's" Proffered Statements Relied Upon By The Government**

Petitioner's next claim of ineffective assistance of counsel is confined to the sentencing phase of the proceeding for failure to investigate the "Maturano's" proffered statements to Agent Edwards and relied upon in the PSR to enhance petitioner's sentence. In pursuit of the enhacement sentence based on drug quantity, the prosecutor called to testify during sentencing to agent Edwards as to the statements proffered by "Maturano," agent Edwards, testified as follows:

> Q. And Defendant Rodriguez, is that the person also known Defendant Maturano?
>
> A. Yes, sir.
>
> Q. Now, what, again, was his statement?
>
> A. His statement was that they traveled from Phoenix, to Montgomery, that he'd given two packages similar in size or the same size to Gutierrez that were located inside the vehicle.
>
> Q. So that would be a total of four packages that same size?
>
> A. Yes, sir, it would.

[Sent. Tr. at pg. 6].

In lieu of offering an explication of evidence he had to offer, petitioner maintains that had counsel investigate prior to sentencing the statement proffered by Maturano to agent Edwards and relied upon in the PSR, he could have contested the testimony of the government's witness. Petitioner asserts that the government's witness' testimony was accepted uncritically. Based on this record, it is apparent to trial counsel did not

17

investigate "Maturano's" proffered statements to agent Edwards prior to sentencing to uncover evidence that could have been brought to the court's attention in mitigating of the drug quantity. "With every effort to view facts as a defense lawyer would have done at the time, it is difficult to see how counsel could have failed to realize that without the readily available [evidence] they were seriously compromising their opportunity to respond to a case for aggravation." **Rompilla v. Beard**, 125 S.Ct. 2456, 2465 (2005).

In assessing the reasonableness of counsel's investigation in this case, the Court must consider the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to investigate further. **Wiggins**, 539 U.S. at 527. Based on petitioner's sentencing hearing, it seems that counsel would have known before sentencing that, as stated in the PSR the government relied upon the Maturano's proffered statement to find the drug quantity. Agent Edwards testified that he'd [Maturano] given two packages similar in size or the same size to Gutierrez that were located inside the vehicle. [Sent. Tr. at pg. 6]. Thus, the court found by preponderance of evidence standard that the drug amounts were as follows:

The Court:  I also find based on all facts in the case that the two bundles that were delivered elsewhere were approximately the same weight and that they were methamphetamine. So I find that 850.1 grams was the weight of what was found there in the truck at the time, and I'm going to double and come up with 1700.2 grams that there's **been testimony before me** which I find both reliable and credible as to that amount. The defendant has had an opportunity to rebut that evidence and has not done so.

18

[Sent. Tr. at pgs. 14-15](emphasis added). Also, counsel apparently made no effort to delay the sentencing hearing to allow more time to investigate and locate Maturano [which was at the county jail] in preparation for testimony at the sentencing hearing. Had counsel investigated the facts already within his knowledge, he likely would have discovered much of the mitigating evidence that has now been revealed. **Wiggins**, 539 U.S. at 525; **Mason v. Mitchell**, 320 F.3d 604, 623 n. 12 (6th Cir. 2003)(observing limited information obtained by defense counsel did not discharge duty to investigate, but triggered it).

The prejudice petitioner suffered from what appears to be counsel's deficient performance at the sentencing phase comes directly for his failure to investigate the statements provided by the Probation Officer in the PSR and to interview Maturano at the county jail. Had he have done so, he would have discovered Maturano's version of the facts were very different as attested by agent Edwards. Maturano's affidavit states as follows:

> ¶ 6.   That on October 8, 2003 at the time of my arrest I provided an statement to agent Edwards as to the drug quantity that I carried on this trip.
>
> ¶ 7    That I told him that I brought down--besides the two pounds that the police found inside the vehicle, I had also given another half things--or two packages of the same cover but with a different amount of the big packages to another subject by the nickname of A.G.

[See Maturano's Affidavit at pg. 2, ¶ 6 & 7].

Under these circumstances, the district court based petitioner's offense level on 1700.2 grams of methamphetamine, the amount of methamphetamine set forth in the PSR relying on the

19

"Maturano's" proffered statements to agent Edwards. Had counsel interviewed Maturano before sentencing, he would have discovered that the district court drug quantity relied upon by preponderance of evidence was erroneous. First, the drug quantity would have been reduced from 1700.2 grams to 1275 grams of methamphetamine.

Second, petitioner's offense level would have been reduced from 34 to 32 and his guideline range from 151-188 months to 121-151 months. Petitioner was sentenced to 188 months—thirty seven months longer than the maximum permissible guideline sentence had counsel investigated the "Maturano's" proffered statements to agent Edwards prior to sentencing. Therefore, the alleged error here did result in a specific, demonstrable increase in sentencing due to counsel's failures and omissions, and petitioner suffered prejudice of it.

DATED at Taft, California this 10th day of March, 2006.

Respectfully submitted,

Sergio Ortiz Alcántara
Reg. 11301-002
P.O. Box 7001/A3A
Taft, California 93268