# EXHIBIT

# A

United States of America v. Sergio Ortiz Alcantar and Michael R. Marks                    April 5, 2004

124

1  Q. And how long was this in relation to that first four-ounce
2  transaction?
3  A. A week, probably. Five -- four, five, six days.
4  Q. And how much were you going to get on this second occasion?
5  A. It was supposed to have been two pounds, but they only
6  brought a pound and a half.
7  Q. Would you tell the jury what happened first in relation to
8  you and Buckner getting the second shipment of methamphetamine?
9  A. It pretty much went the same -- the same way. The same
10 people was there except for Mishay wasn't there. And -- but
11 this time when we got into the trailer, me and Ryan, Ryan did
12 the deal this time. He was talking to Frank, and he went up
13 there and handed him the money. And I just, you know, tried the
14 dope out to make sure it was all right.
15 Q. Was there anybody else with Frank?
16 A. Yeah. Frank's -- Frank's buddy.
17 Q. Was this the same person you talked about earlier?
18 A. Yes, sir.
19 Q. And in the first transaction, what, if anything, did Lara's
20 friend do in relation to that first transaction?
21 A. He was -- he was just sitting on a couch. And then when we
22 got up and went to the kitchen, they both got up. And he was
23 carrying a book bag, which inside the book bag had the dope. He
24 pulled it out and put it on the table.
25 Q. And is the book bag where the drugs were, the four ounces

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

---

United States of America v. Sergio Ortiz Alcantar and Michael R. Marks                    April 5, 2004

125

1  that you got the first time?
2  A. Yes. Yes, sir.
3  Q. Okay. So on this second occasion, the person who was with
4  Frank Lara, what did he do on that occasion?
5  A. Pretty much the same thing except he just pulled -- pulled
6  the dope out of the -- out of the bag and put it on the table.
7  And Frank was -- Frank was counting the money.
8  Q. And how much did you and Buckner bring for the
9  methamphetamine on this occasion?
10 A. Well, we brought, you know, 28. But he only got one and a
11 half. So he took half of it back.
12 Q. Where did the meeting occur on this second occasion?
13 A. At A. G.'s trailer.
14 Q. Did you ever have any occasion to meet with Mr. Lara or the
15 person who was with Mr. Lara at a place other than A. G.'s
16 trailer?
17 A. I went with Ryan to meet Frank at a motel one time. It was
18 just Frank by hisself.
19 Q. And do you recall where the hotel was?
20 A. Off of 231.
21 Q. Now, what, if anything, was A. G. supposed to get, or what,
22 if anything, did he get for putting you and Frank Lara into
23 contact with each other?
24 A. He told me he got -- he never did tell me the sum amount,
25 but he got a little bit of money from Frank and a little bit of

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

---

United States of America v. Sergio Ortiz Alcantar and Michael R. Marks                    April 5, 2004

126

1  dope.
2  Q. Would you describe the person who was with Mr. Lara on those
3  two times that you've talked about Mr. Lara being accompanied by
4  somebody else?
5  A. He was a Mexican guy. He had black hair, tan skin.
6  Q. Did you subsequently have occasion to point out this
7  individual to anyone from law enforcement after you were
8  arrested?
9  A. Yes, sir.
10 Q. Now, you said you had this second transaction with Mr. Lara,
11 and I believe you said it was for, like, a pound and a half?
12 A. Yes, sir.
13 Q. Did you or Mr. Buckner make arrangements with Mr. Lara to
14 receive other shipments in the future after you got that
15 pound-and-a-half shipment?
16 A. Yes, sir. Frank was discussing with Ryan, you know, that --
17 well, Ryan told him he wanted two pounds every two weeks. Frank
18 was discussing, you know, to him about how they was going to get
19 it over there and told him that the guy that was with him, him
20 and a partner would probably be coming instead of Frank coming,
21 because Frank wasn't going to be coming all the time.
22 Q. And is this --
23    MR. MOORER: May I have one moment, Your Honor?
24    (Brief pause)
25 Q. I'm sorry. This person that you said was -- I'm sorry.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

---

United States of America v. Sergio Ortiz Alcantar and Michael R. Marks                    April 5, 2004

127

1  This person that you said was present on these transactions, his
2  partner, as I believe you described him a moment ago --
3  A. Yes, sir.
4  Q. -- is he in the courtroom today?
5  A. Yes, sir, he is.
6  Q. Would you point him out and describe what he's wearing?
7  A. He's over there (indicating) wearing a white T-shirt.
8  Q. Are you familiar with an individual by the name of Shoney
9  (phonetic)?
10 A. Yes, sir, I am.
11 Q. And do you know Shoney by any other name than Shoney?
12 A. Jason Arthur.
13 Q. Did Mr. Arthur have any connection with you and Ryan Buckner
14 or Frank Lara?
15 A. He didn't have no connection with me and Ryan, but he had a
16 connection with Frank.
17 Q. And when you say a connection, did that connection have
18 anything to do with drugs?
19 A. Yes, sir, it did.
20    MR. MOORER: Oh. For the record, Your Honor, the
21 witness previously identified the Defendant Sergio Ortiz.
22 Q. How did Lara come to the Middle District on the second
23 occasion?
24 A. On the second occasion, he drove the green truck.
25 Q. Did you ever know him to use any other vehicles in

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

## 128

1  connection with any of his deliveries here other than the green
2  truck?
3  A. No, sir, I didn't.
4  Q. Did you have any discussions with Mr. Lara about how future
5  deliveries would take place?
6  A. No, sir, I didn't, but he discussed it with Ryan and I was
7  in the --
8       MR. BRUNER: Objection. This is hearsay. I don't
9  believe this is coconspirator hearsay.
10      THE COURT: Mr. Moorer?
11      MR. MOORER: Your Honor, we are about to get into some
12  coconspirator hearsay. That's why I asked him if they had any
13  discussion. I hadn't asked him about the substance of those
14  discussions yet.
15      THE COURT: All right. Let me ask the jury to step
16  back in the jury room. This is going to take just a few
17  minutes, and we'll ask you to come back.
18      (Jury out at 2:05 p.m.)
19      THE COURT: All right. Be seated. Mr. Moorer, go
20  ahead and make your showing.
21      MR. MOORER: Yes, Your Honor.
22  Q. (Mr. Moorer, continuing:) I believe before the jury just
23  stepped out you said that you had a conversation with
24  Mr. Buckner wherein Mr. Buckner related to you how the future
25  deliveries were going to take place?

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

## 129

1  A. Yes, sir.
2  Q. What did Mr. Buckner tell you as to how the future
3  deliveries were going to take place?
4  A. He told me that he -- that Frank wasn't going to be coming.
5  And he was just coming to get a route down and to show his
6  partner, you know, the way to come with the dope.
7  Q. And who was he referring to as the partner that he was
8  showing the route as to how to come with the dope?
9  A. The guy here in the courtroom.
10 Q. The one that you pointed out earlier?
11 A. Yes, sir.
12      MR. MOORER: Your Honor, that would be our offer of
13 proof. I believe that is a coconspirator's statement in
14 furtherance of the conspiracy, because the statement was made so
15 that this individual witness would know how the future
16 deliveries were going to take place, because the witness was the
17 one who was actually getting the dope and testing the dope for
18 Mr. Buckner.
19      MR. BRUNER: Your Honor, my --
20      THE COURT: All right. I'll hear from you, Mr. Bruner.
21      MR. BRUNER: Thank you. My objection is that that is
22 not only coconspirator hearsay, it's hearsay within hearsay
23 within hearsay. This gentleman is saying that someone else told
24 me that someone else told him. At some point in time, hearsay
25 of that magnitude becomes unreliable in and of itself. And we

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

## 130

1  would say at this point that that is what that is.
2       THE COURT: All right.
3       MR. MOORER: Your Honor, may I ask the witness a
4  question in response to that, because I think the -- it may
5  clear up part of this objection.
6       THE COURT: Okay.
7  Q. (Mr. Moorer, continuing:) When this information was relayed
8  to Mr. Buckner, were you able to actually hear this information
9  relayed to Mr. Buckner?
10 A. Yes, sir. I was in the room. That's what I said. Frank
11 was having a conversation with Ryan, and I was standing there
12 listening to them.
13      MR. MOORER: So it wasn't hearsay within hearsay, Your
14 Honor. It was what he overheard one say to the other one, one
15 conspirator say to the other one.
16      THE COURT: All right. What do you say to that,
17 Mr. Bruner?
18      MR. BRUNER: Well, I think he is testifying to a
19 conversation he overheard rather than stating what someone told
20 him then, which I believe was his testimony.
21      THE COURT: I agree with you. He is testifying as to
22 what he overheard. Now, as I understand it, the offer is made
23 that this witness overheard Lara tell -- is it Buckner or
24 Butner?
25      MR. MOORER: Buckner, B-U-C-K, Your Honor.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

## 131

1       THE COURT: And Mr. Moorer, straighten me out if this
2  is not correct. I understand that this witness would testify
3  that he heard Lara tell Buckner that he would not be bringing
4  the methamphetamine back himself but would be sending the other
5  person who was with him.
6       MR. MOORER: Yes, Your Honor. And he said it would be
7  this individual over here that he identified, the defendant.
8       THE COURT: All right. Is that the way you understand
9  it also, Mr. Bruner?
10      MR. BRUNER: Yes, sir.
11      THE COURT: All right. Well, at this time, based on
12 the evidence before me, I find by a preponderance of the
13 evidence that there was a conspiracy in existence; that the
14 declarant, being Lara, was a member of the conspiracy; that the
15 defendant against whom the statement is offered -- that being
16 Mr. Ortiz -- was a member of the conspiracy; that the statement
17 was made in furtherance of that conspiracy, and the reason for
18 that being to establish how the methamphetamine would be brought
19 back and for the benefit of letting this witness know what to
20 expect; and that the statement was made during the course of
21 that conspiracy, being in October of 2003, as I understand the
22 testimony. So based on the evidence before me at this time, I'm
23 going to allow this as a coconspirator statement. I'll overrule
24 the objection.
25      Bring in the jury.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405