# EXHIBIT

# B

## Page 132

United States of America v. Sergio Ortiz Alcantar and Michael R. Marks — April 5, 2004

1  (Jury in at 2:10 p.m.)
2      THE COURT: Are we missing someone?
3      JUROR: We're missing one.
4      THE COURT: Be seated.
5  (Brief pause)
6  (Entire jury present)
7      THE COURT: All right. Mr. Moorer, go ahead.
8      MR. MOORER: Yes, Your Honor.
9  Q. Mr. Bradley, did you have any conversations with Mr. Buckner
10 or Mr. Lara concerning how any future deliveries were to take
11 place?
12 A. What happened was Ryan and Frank were discussing what was
13 going to take place.
14     THE COURT: Mr. Bradley, use their last names along
15 with their first. I don't know if we can remember their first
16 names.
17     THE WITNESS: Okay.
18 A. Frank Lara and Ryan Buckner were talking and discussing what
19 was going to happen, and I was in the room with them. And I
20 overheard them say that Frank -- Frank Lara wasn't going to be
21 coming.
22 Q. And who, if anyone, was Mr. Lara going to send to bring
23 future deliveries of drugs?
24 A. The guy here that's in the courtroom.
25 Q. The defendant you pointed out earlier?

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

## Page 133

United States of America v. Sergio Ortiz Alcantar and Michael R. Marks — April 5, 2004

1  A. Yes, sir.
2      MR. MOORER: I don't have any further questions, Your
3  Honor.
4      THE COURT: All right. Cross-examine, Mr. Bruner?
5      MR. BRUNER: Thank you. If the Court would indulge me
6  one minute, I will use the wireless.
7      THE COURT: All right.
8              CROSS-EXAMINATION
9  BY MR. BRUNER:
10 Q. Okay. Is it Sidney Brian Bradley?
11 A. Yes, sir, that's correct.
12 Q. And I believe you've already testified, haven't you, you've
13 reached a -- what's called a plea agreement with the United
14 States in this matter.
15 A. Yes, sir, I have.
16 Q. Is that correct? Could you state one more time what the
17 terms of that plea agreement are?
18 A. To assist the government with any information that I have
19 towards helping the government to -- and I'm getting 97 months
20 in prison.
21 Q. Okay. And what's the government doing for you?
22 A. Giving me 97 months.
23     MR. BRUNER: Okay. Judge, may I approach?
24     THE COURT: You may.
25 Q. Sir, I'm handing you a document, and I want you to tell, if

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

## Page 134

United States of America v. Sergio Ortiz Alcantar and Michael R. Marks — April 5, 2004

1  you can, the Court what that document is.
2  A. It's my plea agreement.
3  Q. It's your plea agreement. Okay.
4      MR. BRUNER: May I approach one more time, Your Honor?
5  Q. And I guess that's your signature on there, is it not?
6  A. Yes, sir, that is.
7  Q. And what's the date on that?
8  A. 12/29/03.
9  Q. Okay. And could you look -- I'm going to direct your
10 attention to the third page of this where it says government's
11 provisions. Would you look at B down there?
12 A. Yes, sir.
13 Q. And can you tell us what that says?
14 A. The government agrees that in the judgment of the United
15 States Attorney for the Middle District of Alabama, if the
16 defendant provides substantial assistance to the government in
17 the form of truthful statements, testimonies, when called upon,
18 same -- when called upon for same by the United States, the
19 United States will file a motion under Section 5K1 of the United
20 States Sentencing Guidelines asking the Court to reduce the
21 defendant's total monthly sentence by 50 percent.
22 Q. Okay. Now, that says two things, doesn't it? Number one,
23 doesn't that say the government makes the decision whether you
24 get that or not?
25 A. Yes, sir.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

## Page 135

United States of America v. Sergio Ortiz Alcantar and Michael R. Marks — April 5, 2004

1  Q. And it's 50 percent of your total sentence; isn't that
2  right?
3  A. Yes, sir.
4  Q. And that's a pretty good deal to you, isn't it?
5  A. Yes, sir.
6  Q. Okay. Now, when you signed this agreement, this wasn't the
7  first time you'd talked to the government, was it?
8  A. No, sir.
9  Q. Do you recall the first time you talked to the government
10 about making a plea agreement?
11 A. I don't remember the date, but it was before the plea
12 agreement.
13 Q. Would that have been around December 2nd?
14 A. Yes.
15 Q. Okay. And did the government at that point in time talk to
16 you about these same transactions we're talking about today?
17 A. Pretty much. They wanted to know what I -- everything I
18 knew. And I told them everything I knew.
19 Q. Okay. Did they ask you to identify Mr. Ortiz at that time?
20 A. Yes, sir, they did.
21 Q. And did you?
22 A. Yes, sir.
23 Q. Well, would it surprise you to know that you indicated in
24 the statement to the -- that the officer made --
25     MR. MOORER: Objection, Your Honor. I don't believe

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

United States of America v. Sergio Ortiz Alcantar and Michael R. Marks    April 5, 2004

136

1  this would be a proper way to impeach this witness if the
2  witness says that he made an identification at that time.  He
3  wouldn't be able to use some type of report of an interview to
4  impeach this witness if he can't show that the witness has
5  adopted it as his own or it's verbatim.
6       MR. BRUNER:  I'll be happy to show it to him.
7       THE COURT:  Go ahead, then.  I'll give you some
8  latitude on cross-examination.  Go ahead.
9  Q. (Mr. Bruner, continuing:)  Can you read what is marked
10 paragraph 36 of that?
11 A. It says, Bradley stated when he arrived at Buckner's
12 residence --
13      MR. MOORER:  Objection, Your Honor.
14      MR. BRUNER:  I didn't mean for him to read it out
15 loud.  I meant for him to --
16      THE COURT:  Yes.  Just read it to yourself.  Then he'll
17 ask you questions.
18   (Brief pause)
19 A. I read it.
20      MR. BRUNER:  Okay.  May I approach one more time, Your
21 Honor?
22      THE COURT:  You may.
23 Q. Is that an accurate statement of your proffer at that point
24 in time?
25 A. I mean it's -- it's accurate.  But on that statement that I

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

United States of America v. Sergio Ortiz Alcantar and Michael R. Marks    April 5, 2004

137

1  read on, that statement is talking about A. G. knew somebody in
2  Arizona that wanted to see Ryan Buckner's money, take a picture
3  of his money.  He never said no name or nobody, and so I never
4  told Ryan the name right there.  That's the only thing.  I never
5  told him the name.  I told them that Ryan said that he wouldn't
6  take a picture of it.  And I haven't met nobody before then.
7  Q. Okay.  I'm not talking about that.  Can you go to where it
8  says Bradley stated, right here, and read that statement?
9       MR. MOORER:  Your Honor, I assume he wants him to read
10 it to himself.
11      MR. BRUNER:  Yes.
12 A. Yes, sir.  I've read it.
13 Q. Is that an accurate statement?
14 A. Yes, sir.
15 Q. And did you in fact tell the police that the two Hispanic
16 males were not the two in the Montgomery County Jail?
17 A. I told by what I seen in Montgomery County Jail, that they
18 weren't in there.
19      MR. BRUNER:  May I approach one more time and retrieve
20 this, Your Honor?
21 A. When I was in Montgomery City, there was more than just two
22 Hispanics in Montgomery City.
23 Q. But you did make a statement to the police officers on or
24 about December 2nd?
25 A. I made a statement to them that -- saying I didn't see the

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

United States of America v. Sergio Ortiz Alcantar and Michael R. Marks    April 5, 2004

138

1  guy in Montgomery City.
2  Q. So the police officer was wrong the way he wrote your
3  statement?
4  A. No, sir.  He said that -- that I stated that I didn't see
5  the Mexican guy in the city.  There were Mexican guys with me in
6  the city that wasn't the guy.
7       MR. BRUNER:  Judge, I'm going to have to have him read
8  it, because that's not what the statement says.
9       MR. MOORER:  Your Honor, it doesn't really matter.
10 That's collateral.  You can't impeach a witness on extrinsic --
11 I know this is cross-examination, but there are rules for
12 impeachment.  He has to make it or it has to be a verbatim
13 statement under oath for it to be proper grounds to impeach.
14      THE COURT:  Yes.  If this is not the statement of this
15 individual that he signed, I sustain the objection.
16 Q. (Mr. Bruner, continuing:)  And that was the first time you
17 spoke with the police; is that correct?
18 A. I'm not sure if it was the first or second.  I went over
19 there two or three different times talking to them.
20 Q. And they went to see you again after you entered the plea
21 agreement, didn't they?
22 A. After I entered the plea agreement?
23 Q. Yes.  In January.
24 A. I'm not sure if they came and talked to me again after I
25 signed the plea agreement.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

United States of America v. Sergio Ortiz Alcantar and Michael R. Marks    April 5, 2004

139

1  Q. So if they had a statement at an additional time that you
2  made, that would be inaccurate?  Is that what you're telling me?
3  A. No.  I'm saying I'm not sure that they did.  I mean I talked
4  to them several times, but not every time I talked to them was
5  giving them statements.  They'd come and ask me something about
6  something that happened with somebody else, and I'd tell them
7  what I knew.
8  Q. Okay.  Do you have any other criminal record other than the
9  one charge here?
10 A. No, sir.  I have a pending case.
11 Q. What case is that?
12 A. It's a robbery case.
13 Q. Is that in this court or is that in another court?
14 A. No, sir.
15 Q. And your sentencing in the drug case that you have has been
16 put off; is that correct?
17 A. I suppose so.  I was supposed to get sentenced today.
18 Q. And is that because you're going to testify here today they
19 put it off?
20 A. I guess so.
21      MR. BRUNER:  Judge, those are my questions.  May I
22 approach and retrieve the document?
23      THE COURT:  You may.
24      Any questions, Mr. Poti?
25      MR. POTI:  No, sir.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

140

1     THE COURT: Any redirect, Mr. Moorer?
2     MR. MOORER: Yes, Your Honor.
3          REDIRECT EXAMINATION
4     BY MR. MOORER:
5     Q. Mr. Bradley, you said a moment ago when I was asking you
6     questions that you were -- that you're housed up at the Elmore
7     County Jail?
8     A. Yes, sir, that's correct.
9     Q. Have you been housed at the Elmore County Jail since you've
10    been first arrested by the authorities in connection with your
11    case?
12    A. No, sir. I was in the city first; and then they took me
13    from Montgomery City to Ozark, Dale County. And then they
14    brought me from Dale County to Elmore.
15    Q. While you were in the Montgomery City Jail, were you always
16    within the same pod within the city jail?
17    A. I was in the same pod that they first put me in there.
18    Q. Did they ever move you around within the city jail?
19    A. No, sir.
20    Q. You were asked a moment ago about seeing different Hispanic
21    males in the Montgomery City Jail. I believe you said something
22    to the effect that you did not see the person who was with Frank
23    Lara at the city jail. Do you recall that testimony?
24    A. Yes, sir.
25    Q. Did you subsequently have occasion to see the person that

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

141

1     you identified in the courtroom today?
2     A. At the city?
3     Q. Yes.
4     A. Yes, sir. It was after I made that statement.
5     Q. But prior to that occasion, had you seen the defendant at
6     the city jail?
7     A. No, sir, I didn't.
8     Q. To your knowledge, had he been at the city jail prior to
9     that second occasion when you saw him and identified him?
10    A. To my knowledge, I didn't know he was there.
11    Q. At the time that -- the different times that the agents came
12    to you to ask you questions, was the focus of their questions --
13    did it ever change from time to time?
14    A. It changed from different people; but mainly, you know, it
15    was all about crystal meth.
16    Q. Now, you were asked questions about you being sentenced and
17    you -- the sentence that you're going to receive. Do you recall
18    those questions on cross-examination by Mr. Bruner?
19    A. Yes, sir.
20    Q. What is your understanding as to what would happen in the
21    event that you were to get on the stand and say something which
22    is untrue?
23    A. They would take my plea -- plea agreement back.
24    Q. And if they took the -- if you got on the stand and told
25    something which was not true, would you be able to withdraw your

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

142

1     plea agreement then?
2     A. I couldn't take it back, but the government could take it
3     back.
4          MR. MOORER: Mr. Bruner, did you introduce his plea
5     agreement?
6          MR. BRUNER: No.
7          MR. MOORER: Your Honor, for the record, I'm showing to
8     Mr. Poti and Mr. Bruner Government Exhibit #17.
9          And Your Honor, if I may approach the witness to show
10    him Government Exhibit #17.
11         THE COURT: You may.
12    Q. Is Government Exhibit #17 the plea agreement that you
13    signed?
14    A. Yes, sir, it is.
15    Q. Is this your signature on this last page of the plea
16    agreement?
17    A. Yes, sir.
18    Q. Does it fairly and accurately show what the agreement is
19    between you and the United States?
20    A. Yes, sir, it does.
21         MR. MOORER: Your Honor, I offer Government Exhibit
22    #17.
23         THE COURT: It's admitted.
24         MR. MOORER: Your Honor, I have no further questions of
25    this witness.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

143

1          THE COURT: Anything further, Mr. Bruner?
2          MR. BRUNER: No, Your Honor.
3          THE COURT: All right. You can come down.
4          Call your next witness.
5          MR. BROWN: The government calls Willie Theriot.
6          THE CLERK: Mr. Brown, that witness, is he out there?
7          MR. BROWN: No. He's in custody.
8       (Brief pause)
9          WILLIE THERIOT, the witness, having been duly sworn,
10    testified, as follows:
11              DIRECT EXAMINATION
12    BY MR. BROWN:
13    Q. Would you state your name for the record, please?
14    A. Willie Theriot.
15    Q. Mr. Theriot, I see that you're wearing an orange suit that
16    indicates you're currently incarcerated.
17         THE COURT: Do you have the mike?
18      (Brief pause)
19    Q. Mr. Theriot, I see that -- it appears as though you are
20    currently incarcerated; is that correct?
21    A. Yes, sir.
22    Q. Why is that?
23    A. For possession with intent to distribute 500 grams or more
24    of crystal meth.
25    Q. And is that a charge that you have pled guilty to?

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405