Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
 2               FOR THE MIDDLE DISTRICT OF ALABAMA
 3                         NORTHERN DIVISION
 4
 5   UNITED STATES OF AMERICA
 6       vs.                         CASE NO:  2:03cr231-A
 7   SERGIO ORTIZ ALCANTAR,
 8           Defendant.
 9
10
11
                     *  *  *  *  *  *  *  *  *  *
12
                          SENTENCING HEARING
13
                     *  *  *  *  *  *  *  *  *  *
14
          BEFORE THE HONORABLE W. HAROLD ALBRITTON, UNITED
15
     STATES DISTRICT JUDGE, at Montgomery, Alabama, on Wednesday,
16
     June 23, 2004, commencing at 9:02 a.m.
17
     APPEARANCES:
18
     FOR THE GOVERNMENT:      Mr. Todd A. Brown
19                            Assistant United States Attorney
                              OFFICE OF THE UNITED STATES ATTORNEY
20                            One Court Square, Suite 201
                              Montgomery, Alabama   36104
21
     FOR THE DEFENDANT:       Mr. Ben E. Bruner, Attorney at Law
22                            2835 Zelda Road, Suite 8
                              Montgomery, Alabama   36106-2667
23
     ALSO PRESENT:            Ms. Beverly Childress, Interpreter
24
                 Proceedings reported stenographically;
25                  transcript produced by computer.
```

2

1  (The following proceedings were heard before the Honorable
2  W. Harold Albritton, United States District Judge, at
3  Montgomery, Alabama, on Wednesday, June 23, 2004,
4  commencing at 9:02 a.m.:)
5  (Call to Order of the Court)
6      THE COURT: All right. I'm first going to call the
7  case of United States of America versus Sergio Ortiz Alcantar.
8  A translator is necessary in this case, and I'll ask the
9  courtroom deputy to swear in the translator.
10     THE CLERK: Raise your right hand.
11 (The interpreter is sworn)
12 (Responses by the defendant are give through the
13    interpreter)
14     THE COURT: All right. I find Ms. Beverly Childress to
15 be certified and a competent translator for these proceedings.
16     And Ms. Childress, I thank you for your service.
17     Is the government ready to proceed?
18     MR. BROWN: Yes, Your Honor.
19     THE COURT: Defendant ready?
20     MR. BRUNER: Yes, Your Honor.
21     THE COURT: Mr. Bruner, is the translating equipment
22 working appropriately for your client?
23     THE DEFENDANT: (Nods head)
24     MR. BRUNER: Yes, Your Honor. He indicates it is.
25     THE COURT: All right. Mr. Ortiz, have you, and

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

3

1  Mr. Bruner, have you, as defense counsel, reviewed the
2  presentence report, including all revisions that may have been
3  made after the initial disclosure?
4      THE DEFENDANT: Yes.
5      MR. BRUNER: (Nods head)
6      THE COURT: And you have, Mr. Bruner?
7      MR. BRUNER: Yes, sir.
8      THE COURT: According to the presentence report,
9  there's one objection, and that objection has to do with the
10 amount of methamphetamine attributed to the defendant. The
11 defendant contends that he should only be held accountable for
12 850.1 grams rather than the amount shown in the presentence
13 report. Is that the only objection, Mr. Bruner?
14     MR. BRUNER: That's correct, Your Honor.
15     THE COURT: All right. You may be seated at counsel
16 table, and I'll call on the government to proceed.
17     MR. BROWN: Your Honor, the government calls Task Force
18 Agent Scott Edwards.
19     THE CLERK: I'll ask you to raise your right hand.
20     SCOTT EDWARDS, the witness, having been duly sworn,
21 testified, as follows:
22               DIRECT EXAMINATION
23 BY MR. BROWN:
24 Q. Would you state your name, please?
25 A. Scott Edwards.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

4

1  Q. How are you employed?
2  A. I'm employed with the City of Montgomery in the Narcotics
3  Bureau and assigned to the HIDTA Drug Task Force.
4  Q. Were you employed in that capacity back on October 8th,
5  2003?
6  A. Yes, I was.
7  Q. On that date, did you arrange for a -- the obtaining and
8  execution of a search warrant at a local hotel?
9  A. Yes, I did.
10 Q. Would you explain to the Judge how that came about?
11 A. Earlier that day, Task Force Agent David DeJohn contacted me
12 and stated that he had received information from two different
13 sources in reference to a substantial amount of crystal
14 methamphetamine being delivered to Montgomery by a known drug
15 supplier. We set up surveillance, followed the surveillance.
16 And from previous arrests and information that we obtained, we
17 gathered a search warrant and applied for a search warrant for a
18 hotel room and a vehicle.
19 Q. Were you present at the execution of the search warrant?
20 A. Yes, I was.
21 Q. What, if anything, was located at -- during the course of
22 that search?
23 A. In the room, there were two cell phones located. And inside
24 of a green Dodge pickup truck, there were two one-pound bundles
25 of crystal methamphetamine located on the battery compartment

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

5

1  side of the truck under the hood.
2  Q. After the search warrant was executed, were there any
3  arrests made?
4  A. Yes. The defendant and one other subject was arrested.
5  Q. What was the other subject's name?
6  A. Maturano. I don't know how to pronounce his full name.
7  Last name is Maturano.
8  Q. Okay. Did you have the opportunity to interview either
9  Mr. Maturano or the defendant?
10 A. Yes, I did.
11 Q. What, if anything, did the defendant state?
12 A. The defendant stated that on this trip, they brought down --
13 besides the two pounds that we found inside the vehicle, he had
14 also given another two pounds -- or two packages of the same
15 size to another subject by the nickname of A. G. The
16 defendant's last name is Gutierrez.
17     THE COURT: When you say the defendant, you're
18 referring to the Defendant Ortiz told you this?
19     THE WITNESS: Yes, sir.
20 Q. Was it Defendant Ortiz or Defendant Maturano who told you
21 about the four pounds?
22 A. It was Ortiz. I believe it was Ortiz.
23     THE COURT: That's different from the presentence
24 report.
25 Q. Did you -- have you had the opportunity to review a report

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

6

1  of investigation relating to this event?
2  A. Yes, I have.
3  Q. Would reviewing a copy of that refresh your recollection as
4  to the statements that were made?
5  A. Yes, it definitely would. I get the two mixed up with their
6  names.
7      MR. BROWN: May I approach the witness, Your Honor?
8      THE COURT: You may.
9  Q. I'd ask you to read that to yourself.
10   (Brief pause)
11 Q. Detective Edwards, does that refresh your recollection as to
12 the statement?
13 A. Yes, it does. It was Defendant Rodriguez.
14 Q. And Defendant Rodriguez, is that the person also known as
15 Defendant Maturano?
16 A. Yes, sir.
17 Q. Now, what, again, was his statement?
18 A. His statement was that they traveled from Phoenix, Arizona,
19 to Montgomery, that he'd given two packages similar in size or
20 the same size to Gutierrez that were located inside the vehicle.
21 Q. So that would be a total of four packages that same size?
22 A. Yes, sir, it would.
23 Q. Now, later on that evening or almost at the same time, was
24 there another search being conducted relating to a person by the
25 name of Anibal Gutierrez?

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

7

1  A. Yes, there was.
2  Q. What, if anything, was located during the course of that
3  search?
4  A. During that search, they located a small quantity of -- or
5  quantity of crystal methamphetamine at his trailer.
6  Q. Did he indicate whether -- or where that particular quantity
7  had come from?
8  A. Yes. He stated that it came from the hotel, Days Inn,
9  behind the Waffle House at Congressman -- Wetumpka Highway and
10 the Northern Boulevard.
11 Q. Now, Defendant Maturano, had he indicated where the other
12 two pounds had gone, the other two aside from the ones that were
13 found at the hotel?
14 A. Yes. He stated that he had sold a substantial amount to
15 another subject who was at the -- his residence earlier during a
16 surveillance and that we had arrested earlier that evening.
17 Q. Did you also have the opportunity to interview a person by
18 the name of Sidney Brian Bradley?
19 A. Yes, I did.
20 Q. Would you explain what, if anything, he told you in relation
21 to the defendant in this case, Ortiz?
22 A. He stated that he had met them -- I don't -- Antonio
23 Gonzales had approached him earlier stating that he could get a
24 new supply of methamphetamine delivered to him at a cheaper
25 price. At some point later, he met with Ortiz and a subject by

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

8

1  the name of Poncho that he only knew at Gutierrez's trailer.
2  They arranged for a quantity of methamphetamine to be delivered
3  and sold, at which point Mr. Bradley and another subject
4  purchased around four ounces of crystal methamphetamine from
5  them at the trailer.
6  Q. The person that was identified as being Poncho, did -- were
7  you able later on to identify who that person was?
8  A. Yes, we were.
9  Q. Who was that?
10 A. That was a white male by the name of Frank Lara.
11     MR. BROWN: Just a second, Your Honor. I believe
12 that's all the questions the government has.
13    (Brief pause)
14     MR. BROWN: Thank you, Detective. I don't have any
15 further questions for you. The defense counsel may have some.
16     THE COURT: All right. Mr. Bruner?
17          CROSS-EXAMINATION
18 BY MR. BRUNER:
19 Q. It was, in fact -- just to clarify the record --
20 Mr. Maturano who discussed certain quantities of methamphetamine
21 with you, was it not?
22 A. Rodriguez.
23 Q. I believe it's Maturano Rodriguez.
24 A. That could -- yes, sir. I get confused on the name, so I
25 just stick with one name so I won't insult anyone.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

9

1  Q. And what he told you, as I understand it, was that there
2  were two additional packages he had delivered to Anibal
3  Gutierrez; is that correct?
4  A. That's correct.
5  Q. And you found a small amount on Mr. Gutierrez when you
6  searched him or officers under your direction and control
7  searched him; is that correct?
8  A. That's correct.
9  Q. And how much was that small amount?
10 A. I don't know the total weight on it.
11 Q. Okay. Well, did you find substantial amounts of money on
12 Mr. Gutierrez?
13 A. No, sir, I don't believe they did. I don't recall that they
14 did.
15 Q. Did Mr. Rodriguez or Maturano ever discuss how that -- who
16 prepared those packages?
17 A. They said that Mr. Lara had given them to them.
18 Q. So he had no -- can you explain to the Judge how these
19 packages, the two you found, were wrapped?
20 A. Yes, sir. They were wrapped in duct tape approximately this
21 long and about this big around (indicating).
22 Q. And so Mr. Gutierrez -- or Mr. Rodriguez, whose statements
23 you're relying on here, did not know exactly what was in those
24 packages, did he, assuming they were wrapped like the other
25 packages.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

United States of America v. Sergio Ortiz Alcantar                                      June 23, 2004

10

1  A. He just stated that Mr. Lara gave them to him and asked him
2  to transport them to Montgomery and get up with Mr. Gutierrez.
3  Q. And he said they were approximately the same size? Is that
4  your statement?
5  A. Yes, sir.
6  Q. And these -- none of that -- other than the amount you found
7  on Mr. Gutierrez, none of the other alleged methamphetamine was
8  ever discovered, was it?
9  A. Yes, sir. There was some that was discovered.
10 Q. And where was that?
11 A. That was in Mr. Willie Theriot's vehicle.
12 Q. Okay. And how much was there?
13 A. Approximately four ounces.
14 Q. Okay. And how much is that in grams? Do you know?
15 A. It's around a hundred and -- a hundred and eight, 120 grams,
16 somewhere in there.
17 Q. Now, was this weighed by the lab?
18 A. Yes, sir, it was.
19 Q. Okay. And how much total out of the two packages that you
20 recovered in the automobile at the hotel -- what was the total
21 weight of those?
22 A. I'd have to look at the report from the forensics lab.
23 Q. Okay. You don't know off the top of your head?
24 A. No, sir.
25    MR. BRUNER: Judge, those are my questions.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

United States of America v. Sergio Ortiz Alcantar                                      June 23, 2004

11

1     THE COURT: All right. Any redirect?
2     MR. BROWN: No, Your Honor.
3     THE COURT: All right. You can come down.
4     THE WITNESS: Thank you, sir.
5     Mr. Brown, anything further?
6     MR. BROWN: No, Your Honor.
7     THE COURT: All right. Mr. Bruner?
8     MR. BRUNER: Judge, I think it's our contention that
9  this is so speculative as to not be reliable. I believe the
10 probation officer has quoted, in fact, the correct law, of
11 course. But in this case what you have are people guessing
12 about what was in packages that weren't weighed that we don't
13 know whether there was any amounts in there that were
14 substantial or insubstantial or whatever. And you're relying on
15 one person who did not see what went into those packages to
16 ascertain that the package was about the same size, therefore,
17 it must be about the same weight. We think that is too far
18 afield to make a rational determination that those packages were
19 the same weight as the other two and merely double up, which is
20 what has happened in this case with the weight here.
21    THE COURT: All right. Do you have any evidence you
22 want to present?
23    MR. BRUNER: No, Your Honor. There is no evidence.
24 That's part of our problem here.
25    THE COURT: Do you have any testimony you want to

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

United States of America v. Sergio Ortiz Alcantar                                      June 23, 2004

12

1  present?
2     MR. BRUNER: No, Your Honor.
3     THE COURT: All right. Mr. Brown?
4     MR. BROWN: Your Honor, the government's position is
5  the agreement was to bring these four pounds of methamphetamine
6  to Montgomery where it would be distributed, that two pounds of
7  it went to a codefendant, Anibal Gutierrez, and was distributed
8  from that point. That amount is corroborated by the fact that
9  both Anibal Gutierrez and Willie Theriot, who are codefendants
10 in the case, were both found with quantities of methamphetamine
11 that had been moved down the distribution line, for lack of a
12 better term, after they had been acquired by Mr. Gutierrez.
13 Mr. Maturano was pretty clear in pointing out that there was --
14 the other two packages were the same size as the first two. And
15 the first two were two-pound quantities. And then it would hold
16 that the other two would be the two-pound quantities as well.
17    THE COURT: You're relying primarily on those four
18 packages? This other -- I'm a little confused about the
19 testimony as to the other amounts. The presentence report
20 refers to an earlier delivery or delivery at a different time,
21 and I understood the witness's testimony to relate to this
22 particular time.
23    MR. BROWN: Right, Your Honor. There is another
24 four-ounce quantity that was delivered on a second occasion.
25 Mr. Bradley testified at trial about being at a -- at Anibal

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

United States of America v. Sergio Ortiz Alcantar                                      June 23, 2004

13

1  Gutierrez's residence on a second occasion, not the October 8th
2  occasion. And during the course of his trial testimony, he
3  indicated that that was the day that he purchased, along with
4  another individual, the four ounces from Mr. Lara and Mr. Ortiz
5  at the residence of Mr. Gutierrez. Trial testimony was that
6  they purchased, if I'm not mistaken, the three ounces at one
7  point, did not have enough money for the fourth ounce, went and
8  got money for the fourth ounce, and purchased the fourth ounce
9  at that time, of which Mr. Bradley received one of the four
10 ounces.
11    THE COURT: Do you have a transcript of that portion of
12 the trial? I tried the case, but I'm going to have to tell you
13 I don't have a recollection of it.
14    MR. BROWN: I don't have it either, Your Honor. And it
15 hasn't been ordered, as I don't believe the appeal has been
16 perfected at this point -- the record for appeal has been
17 perfected.
18    THE COURT: All right. I'm not going to consider that
19 part of it.
20    All right. In considering this evidence, I'm going to
21 be guided by the case of U.S. versus Zlatogur, 271 F.3d 1025, at
22 page 1031, Eleventh Circuit, 2001, in which the Eleventh Circuit
23 provided that the court may rely on hearsay evidence in
24 sentencing as long as that evidence, first, has sufficient
25 indicia of reliability; second, the court makes specific

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

14

1  findings of fact as to credibility; and third, the defendant has
2  had an opportunity to rebut the evidence.
3       The testimony from this witness is that he was
4  personally told by the person who was in the hotel room with the
5  defendant that in addition to what was found in the truck, the
6  two of them had brought with them on this trip and had delivered
7  earlier two packages of approximately the same size and amount.
8  From what's been testified to today and also from the testimony
9  at trial, I'm satisfied that this defendant was a part -- and
10 also by the finding of the jury -- I'm satisfied that this
11 defendant was part of a conspiracy involving a man by the name
12 of Frank Lara who was sending methamphetamine to Alabama and
13 that this trip on this occasion involved four packages of
14 methamphetamine for distribution here in this area and that the
15 testimony as to it being about the same size and the testimony
16 that it was also methamphetamine, coming from a person who had
17 just been picked up for this offense along with the defendant,
18 certainly has indicia of reliability. It was not in this
19 defendant's interests to, at that time, confess to having
20 delivered twice as much as was found there on the scene. I find
21 that that testimony is both reliable and is credible.
22      I also find based on all the facts in the case that the
23 two bundles that were delivered elsewhere were approximately the
24 same weight and that they were methamphetamine. So I find that
25 850.1 grams was the weight of what was found there in the truck

15

1  at the time, and I'm going to double that and come up with
2  1700.2 grams that there's been testimony before me which I find
3  both reliable and credible as to that amount. The defendant has
4  had an opportunity to rebut that evidence and has not done so.
5       Based on that, I find by a preponderance of the
6  evidence that this defendant is responsible for 1,700.2 grams of
7  methamphetamine and that that's the amount to be attributed to
8  him. Having made that finding, that comes within the
9  presentence report amount that would require a finding of 34 as
10 the base offense level. And I overrule the objection and find
11 that the offense level is 34 in this case.
12      All right. Having made findings on the objection, the
13 Court adopts the factual statements contained in the presentence
14 report as well as the findings that I have made this morning
15 with the specific finding that the offense level is 34, the
16 criminal history category is I, the guideline range is from 151
17 months to 188 months, the supervised release period is from four
18 years to five years, and the fine range is from $17,000 to $8
19 million.
20      Come forward, please.
21      THE CLERK: Is that 17,500?
22      THE COURT: $17,500.
23      All right. Mr. Bruner, is there anything you'd like to
24 say on behalf of your client?
25      MR. BRUNER: Judge, my client has asked for some

16

1  consideration. The Court -- and I understand this is really a
2  Bureau of Prisons situation. But his family is in California
3  and Arizona, and he has asked to -- for the Court to recommend,
4  if the Court can, that he be incarcerated somewhere in that area
5  where he may be near his family in either the Phoenix, the
6  Lompoc, California, area, or the Safford, Arizona, area. And we
7  would ask that the Court please consider those so that he may be
8  near his family.
9       THE COURT: All right. Mr. Ortiz, is there anything
10 that you would like to say?
11      THE DEFENDANT: No.
12      THE COURT: All right. As to placement in California
13 or Arizona, I understand the reason that the defendant wishes
14 this. It's not my practice to recommend particular areas or
15 institutions because I don't know what the availability of
16 places there would be. I don't know how this defendant's
17 particular offense would fit into any of those institutions.
18 And it's my practice to leave placement up to the Federal Bureau
19 of Prisons. However, I do understand that they take into
20 consideration matters such as family, and I suggest that defense
21 counsel should pass on these concerns and these requests to the
22 Federal Bureau of Prisons.
23      MR. BRUNER: Yes, sir.
24      THE COURT: The sentence will now be stated, but you
25 will have a final chance to make legal objections before the

17

1  sentence is imposed.
2       Pursuant to the Sentencing Reform Act of 1984, it is
3  the judgment of the Court that you are hereby committed to the
4  custody of the Federal Bureau of Prisons to be imprisoned for a
5  total term of 188 months. The term consists of terms of 188
6  months on each count to be served concurrently. The Court
7  recommends that you be designated to a facility where intensive
8  residential substance abuse treatment is available. You are
9  remanded to the custody of the United States Marshal.
10      You shall pay to the U.S. District Court Clerk a
11 special assessment fee of $200, which is due immediately. Based
12 on your inability to pay, the Court waives imposition of a fine.
13      Upon release from imprisonment, you shall be placed on
14 supervised release for a term of five years. This term consists
15 of five years on count one and five years on count two, all such
16 terms to run concurrently. Within 72 hours of release from
17 custody, you shall report to the probation office in the
18 district to which you are released. While on supervised
19 release, you shall comply with the mandatory and standard
20 conditions of supervised release on file with this court.
21      The Court also orders the following special
22 conditions. You shall participate in drug testing and/or
23 treatment if directed by the probation officer. You shall
24 contribute to the cost of any treatment based on ability to pay
25 and availability of third-party payments. You shall submit to a

18

1  search of your person, residence, office, or vehicle pursuant to
2  the search policy of this court.
3       Upon completion of the sentence, the defendant shall be
4  surrendered to a duly sworn immigration official for
5  deportation, and the defendant shall not reenter the United
6  States of America without the consent of the Attorney General of
7  the United States.
8       The Court finds that there is no identifiable victim
9  who incurred a financial loss as a result of this offense.
10      Now, are there any objections to the sentence or to the
11 manner in which the Court pronounced it? For example, do you
12 have any objection to the Court's ultimate finding of fact or
13 conclusions of law? If you fail to state such fully articulated
14 objections at this point, you run the risk of being unable to
15 raise such objections on appeal.
16      Mr. Bruner?
17      MR. BRUNER: Judge, we would raise the same objection
18 once again, just for the record, that we've had as to quantity,
19 which is in the document and presentence report.
20      I would also object to the Court's statement that he
21 should turn himself in for deportation proceedings. There are
22 no more deportation proceedings. They ended in 1996. It would
23 be removal proceedings. It sounds like this Court is trying to
24 deport him. I don't know if he's deportable or not. The other
25 thing I would object to is the Attorney General has no more

19

1  say-so over who enters the country or who leaves the country.
2  That is now the province of the Department of Homeland Security.
3       THE COURT: All right. On the latter, the second
4  objection, Mr. Conoly, let me hear from you on that, the
5  probation officer.
6       PROBATION OFFICER: Your Honor, it's just simply a
7  statement that allows the Bureau of Prisons to give him to the
8  appropriate immigration officials so he doesn't slip through the
9  cracks and he is not allowed to surrender to the streets, but
10 simply a note so that they will make sure that he's handled
11 accordingly with Immigration or -- and Customs enforcement now.
12 We will check the wording of our statements to make sure in the
13 future they do comply. If what Mr. Bruner has raised is
14 correct, then we can change that for any future hearings. But
15 if it's a removal proceeding or a deportation proceeding, I
16 think that would be a moot point at this point in time, because
17 all we're asking is that the Court advise the Bureau of Prisons
18 of this and that he not be allowed to be placed on supervised
19 release or released to the street without going through the
20 appropriate due process for them to determine his citizenship
21 and his deportation status.
22      THE COURT: All right. I'm going to amend the language
23 of that to say that upon completion of the sentence, the
24 defendant shall be surrendered to a duly sworn immigration
25 official for appropriate action and shall not reenter the United

20

1  States without required approval by the appropriate official of
2  this government.
3       PROBATION OFFICER: That would be appropriate, Your
4  Honor.
5       THE COURT: Mr. Brown?
6       MR. BROWN: That's satisfactory, Your Honor.
7  Mr. Bruner is correct. That authority has passed over to the
8  Department of Homeland Securities. But I think that's
9  appropriate language.
10      THE COURT: All right.
11      MR. BRUNER: I have no objection to that language, Your
12 Honor.
13      THE COURT: All right. And as to the first objection,
14 that objection is overruled.
15      Mr. Brown, do you have any objections?
16      MR. BROWN: No objections, Your Honor.
17      THE COURT: The sentence is ordered imposed as stated.
18      Mr. Ortiz, you have the right to appeal. If you cannot
19 afford the cost of an appeal, you have the right to apply for
20 leave to appeal in forma pauperis. And if you do apply for that
21 and if you qualify for that, you will be furnished with a free
22 lawyer and a free transcript. Any appeal must be taken within
23 ten days from today. You are recommitted to the custody of the
24 United States Marshal.
25      Mr. Bruner --

21

1       MR. BRUNER: Your Honor, that's all I have.
2       THE COURT: -- thank you for your services, and you may
3  be excused.
4       MR. BRUNER: Thank you, Your Honor.
5       MR. BROWN: May I be excused, Your Honor?
6       THE COURT: You may, Mr. Brown.
7       MR. BROWN: Thank you, Your Honor.
8       THE COURT: Thank you, Ms. Childress.
9       THE INTERPRETER: You're welcome.
10      (Proceedings are recessed at 9:32 a.m. and reconvene at
11      11:42 a.m., as follows:)
12      THE COURT: Are you ready?
13      THE INTERPRETER: Yes, sir.
14      THE COURT: All right. I am recalling the case of
15 United States of America versus Sergio Ortiz Alcantar. I
16 overlooked including the reasons for setting the sentence at 188
17 months, the maximum, rather than a lower level, and I want to do
18 that at this time. This will not affect the sentencing or
19 anything.
20      We have the translator, Ms. Childress, back in the
21 courtroom. And you're still under oath.
22      There are several reasons that this sentence was set at
23 188 months, that being the maximum, rather than a lower amount.
24 The first has to do with the amount of distribution. The
25 defendant assisted in the distribution of 1,700.2 grams of

United States of America v. Sergio Ortiz Alcantar                    June 23, 2004

22

1  methamphetamine. Further, under the presentence report, the
2  factual findings of which I adopted, this defendant illegally
3  entered the United States around 2001. He was deported in 2003
4  by the INS but subsequently returned in May or June of 2003,
5  where he lived until he was picked up for this offense. He was
6  in the United States illegally at the time he committed this
7  instant offense.
8       Also, although the defendant has pleaded not guilty, as
9  he has a right to do, and maintains that, the jury found that he
10 was guilty. I also find him to be guilty, and I have considered
11 the fact that he's expressed no remorse for his actions. Even
12 without that, however, I would have sentenced at 188 months, but
13 I do make that comment. And in accordance with 18 U.S.C.,
14 Section 3553(a)(2), the sentence reflects the need to promote
15 respect for the laws of the United States, afford adequate
16 deterrence to criminal conduct, and protect the community from
17 further crimes. Those are my reasons for setting the sentence
18 at 188 months.
19      Mr. Bruner, do you have any comment or --
20      MR. BRUNER: Judge, we would -- first of all, I would
21 object to the Court considering or concluding that there's been
22 illegal reentry in this case. There's been no showing to me of
23 any documents provided by the Department of Homeland Security.
24 The statements within the presentence investigation report were
25 based on a comment that Mr. Ortiz made in his interview.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

United States of America v. Sergio Ortiz Alcantar                    June 23, 2004

23

1  Deportation is a very fickle thing. Remove -- taking
2  someone back across the border may or may not be deportation or
3  removal or exclusion. And I've seen no order, and I think it's
4  based on something he said with -- I believe he has a fourth
5  grade education. That would be improper to consider that when
6  the United States Government could very well produce documents
7  to substantiate it.
8       THE COURT: I'm going to accept as true the statement
9  made in the presentence report as to what this defendant said.
10 If you want to submit evidence to the contrary, I'll be happy to
11 consider that.
12      MR. BRUNER: Judge, I have no evidence to the contrary.
13      THE COURT: Then the defendant, having stated that he
14 was deported by the INS but then came back into the country, I
15 find that to be true and have considered that in setting the
16 sentence where it is. That's one of the numerous factors that
17 I've considered. So I overrule the objection.
18      MR. BRUNER: Judge, I would also state to the Court
19 that this is -- that he has no criminal record or criminal
20 history in this category -- in this case, and I would ask the
21 Court to give some consideration to that. And there's no
22 indications of any violent crime or violent history in the past,
23 which is usually, I think, the reason when you see the maximum
24 guideline range being imposed on someone who has no criminal
25 history. And we would just ask the Court to consider that.

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405

United States of America v. Sergio Ortiz Alcantar                    June 23, 2004

24

1       THE COURT: I did consider that before I sentenced the
2  defendant at 188 months. I've now stated the reasons that I
3  sentenced at 188 months, and I overrule the objection.
4       MR. BRUNER: That would be all we have, Your Honor.
5       THE COURT: Anything from the government, Mr. Brown?
6       MR. BROWN: No, Your Honor.
7       THE COURT: All right. Then the record will be
8  modified according to what we've just done. And you're
9  recommitted to the custody of the United States Marshal.
10      MR. BRUNER: Thank you, Your Honor.
11      THE COURT: Court is adjourned.
12      (Proceedings concluded at 11:49 a.m.)
13              * * * * * * * * * *
14           COURT REPORTER'S CERTIFICATE
15      I certify that the foregoing is a correct transcript
16 from the record of proceedings in the above-entitled matter.
17      This 4th day of August, 2004.
18
19                    /s/ Risa L. Entrekin
20                    RISA L. ENTREKIN, RDR, CRR
                      Official Court Reporter
21
22
23
24
25

Risa L. Entrekin, RDR, CRR  U.S. District Court
One Church Street, Montgomery, AL  36104  334-240-2405