UNITED STATES DISTRICT COURT
MIDDLES DISTRICT OF ALABAMA
NORTHERN DIVISION

SERGIO ORTIZ ALCANTAR, )
)
      Petitioner, )
)
vs. )
) Case No. 2:06cv245-WHA-SRW
UNITED STATES OF AMERICA, ) (2:03cr231-003)
)
      Respondent. )
_____)

## REPLY TO RESPONDENT'S OPPOSITION TO PETITIONER'S MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255

COMES NOW the Petitioner, Sergio Ortiz Alcantar, pro se in the above-referenced cause, and hereby replies to the government's opposition to the petitioner's motion to vacate, set aside or or correct sentence pursuant to 28 U.S.C. § 2255.

**1.  Identification Testimony in General**

Petitioner's ineffectiveness claim is based primarily upon what he contends was counsel's, Mr. Burner, failure to conduct a reasonable pretrial investigation by contacting the available witness, Maturano Rodriguez, which name had been given to him and by failing to make any effort of his own to contact and interview this witness constitute ineffective assistance. The government in its response, mischaracterized the evidence presented during sentencing as to the real event of the proffer statement provided by Mr. Rodriguez. The officer's testimony was as follows:

Q.  What if anything, did the defendant state?

A.  The defendant stated that **on this trip**, they brought down -- besides the two pounds that we found inside the vehicle, he had also given another two pounds -- or two packages of the same size to another subject by the nickname of A.G. The defendant's last name is Gutierrez.

[Sent. Transcript at page 5](emphasis added).

Contrary to what the government characterized in its opposition, the testimony of Mr. Rodriguez—albeit providing truthful testimony per his agreement with the government [Gov't. Exhibit F at 5-7]—could have been used to impeach the testimony of Bradley. The government does not in this court press its argument—submitting counsel's self-serving affidavit—that "[t]his turn of events resulted in the mutual decision by himself and Ortiz-Alcantar not to call Maturano Rodriguez as a witness, as making any statements favorable to Ortiz-Alcantar would destroy Maturano-Rodriguez's own plea agreement." [Gov't. Br. at 8, quoting Bruner's Affidavit].

In the instant case, defense counsel's failure to investigate and call Maturano-Rodriguez as a witness concerning the previous drug dealing which had never involved petitioner cannot be reasonably be called as strategic. Simply stated, there was no downside to introducing Maturano-Rodriguez's testimony for impeachment purposes. Defense counsel's theory of the case—that petitioner was misidentified by Sidney Bradley, Bruner's Affidavit at 1, would have been aided rather than impeded by the introduction of testimony undermining the veracity of the government's witness. At the very least, their observational powers would have been called into serious question. Bringing Maturano-Rodriguez's testimony to the jury attention would not introduce any inconsistency into the defense theory of the case, particularly since defense counsel suggested that petitioner was not at the drug transactions at all as testified by Bradley.

To the contrary, counsel's failure to impeach the witness foreclosed a strong line of defense that couls have been presented to the jury in tandem with the misidentification theory or, more likely, could have supplanted the weak claim of misidentification altogether. Defense counsel, because he failed to use the Maturano-Rodriguez's testimony available to him, was unable to argue to the jury

that was Maturano-Rodriguez which was present on two previous where drug deals were transacted. Maturano-Rodriguez's plea agreement with the government by providing truthful information on all matters related to the offense, Gov't. Br. at 7, would have become relevant as more than a mere aspersion on his credibility. The fact that he had an agreement and required to provide truthfully information, or face prosecution for perjury, false statements, and/or obstruction would be probative.

Instead, by failing to impeach the government's witness counsel was forced to make a poor cross-examination without any counter-evidence at all that were not only counterfactual but also had the effect of making petitioner's conviction almost inevitable. After defense counsel let the Bradley's testimony go unchallenged by any other evidence, it is difficult to imagine how any reasonable jury could have failed to convict a man who was on an apartment dealing with drugs on company of other individual on couple of occasions, and identified by an eyewitness, namely the buyer. Defense counsel sealed petitioner's fate by failing to investigate and call Maturano-Rodriguez as a defense witness.

Because no reasonable trial strategy could have been affected adversely by introducing this witness, it seems exceedingly that trial counsel even aware of it failed to investigate exculpatory testimony. **Strickland** itself makes clear that "strategic choices made after less than complete investigation are reasonable **precisely to the extent that** reasonable professional judgments support the limitations on investigation." 466 U.S. at 690-91 (emphasis added). Counsel's decision not to call exculpatory eyewitness in petitioner's defense—if it was a decision at all, Bruner's Affidavit at 1-2—was necessarily one made after an incomplete investigation, for counsel never spoke with such witness to find out what he had to say. Only if it was objectively reasonable for counsel to self-limit his investigation in this way may his "decision" not to present Maturano-

3

Rodriguez's testimony itself be considered reasonable. As such, given the circumstances confronting Mr. Bruner, it was not reasonable for him to believe that it was unnecessary to identify and interview potentially exculpatory witness to the events underlying the charges against petitioner.

But whatever the weaknesses in the government case that Mr. Bruner succeeded in exposing in this fashion, his defense of petitioner did not elicit any testimony that petitioner was **not** among the group of individuals who were present on two previous drug transactions. The omission of such exculpatory testimony cannot be discounted. The government's witness who identified petitioner as a drug dealer was proven to be wholly incredible, and none of the weaknesses and inconsistencies in his identification was fatal to the government's case. He testified that it was petitioner he had seen on two previous occasions dealt with drugs which he had seen him. Opposing testimony from other co-defendant to the conspiracy, positing that petitioner was not a participant on previous dealings, would have given the jury a qualitatively different and more powerful reason to believe that the government's witness was mistaken in his identification of petitioner and possibility lied to pleasant with the government for his cooperation. See **Wright v. Gramley,** 125 F.3d 1038, 1042 (7th Cir. 1997)(where state's case against petitioner relied almost exclusively on testimony of two eyewtnesses who saw assailant only briefly, occurrence witnesses gave phisycal description of aasailant "radically different" from petitioner's appearance "would have transformed a relatively weak defense into a far stronger one").

Nonetheless, Maturano-Rodriguez's guilty plea in the face of a proffer that expressly required him to cooperate fully with the United States by providing truthful information on all related matter to the offense as well he had provided favorable information regarding petitioner obviously does not diminished his utility as a defense witness to some degree. See **Bryant v. Scott,** 28 F.3d 1411, 1419

(5th Cir. 1994)((without interviewing a co-defendant who had pleaded guilty, petitioner's trial attorney "was ill equipped to assess his credibility or persusiveness as a witness, despite the objective factors tending to impugn [his] credibility"). But Mr. Bruner had no reason not to contact and interview Maturano-Rodriguez petitioner has identified. This witness was implicated in the conspiracy, neither did he suffer from any other disability that necessarily would have impaired his credibility in the eyes of the jury. A decision that it was unnecessary to look for and contact such available witness cannot be described as reasonable. See **Washington**, 219 F.3d at 632 (trial counsel's failure, <u>inter alia</u>, to ascertain what exculpatory evidence defendant's witnesses might have was a "flagrant example[] of ineffectiveness"); **Lord v. Wood**, 184 F.3d 1083, 1095 (9th Cir. 1999)(counsel cannot assess credibility and demeanor of prospective witness without "looking him in the eye and hearing him tell his story"). Notably, Mr. Bruner himself offered no strategic reason for the failure; see generally Mr. Bruner's Affidavit, he simply simply felt that [Maturano-Rodriguez] might not be as likely to give exonerating testimony—an explanation that petitioner maintains it is incredible.

Petitioner's entitlement to habeas relief hinges on whether the prejudice prong of **Strickland** has been satisfied: whether petitioner's counsel's unprofessional errors were sufficient "to undermine confidence in the outcome of the trial." **Eze v. Senkowski**, 321 F.3d 110, 137 (2nd Cir. 2003)(citation omitted). In **Eze** the court concluded that its confidence in the outcome of the trial was undermined because of the defendant's counsel's "inability to provide a convincing explanation for ... critically important omissions." Id. at 138.

The present case is as compelling as any of these examples of prejudice: **Nixon**, 888 F.2d at 116-17 (granting writ because counsel failed to introduce eyewitnesses' inconsistent identification where witness was the "only eyewitness

to the murder to testify at trial" and "other evidence against [defendant[ was far from overwhelming[.]"); **Blackbeurn,** 828 F.2d at 1184-86 (affirming grant of writ where counsel's failure to challenge "critical differences in [witness's] identification testimony" left the only credible identifying witness's testimony virtually unchallenged").

One need reflect only for a moment about what would likely have occurred if petitioner's counsel had confronted Bradley with the statement and testimony proffered by Maturano-Rodriguez the person who in reality participated on the both previous transactions.  If he denied giving that description, all counsel need to have done to totally undermine his credibility would have been to place Maturano-Rodriguez's proffered statement exculpating petitioner in evidence and call him to testify, who would have presumably confirmed the accuracy of the proffered statement.  If, on the other hand, he admitted giving the inconsistent description but attempted to walk away from it by explaining that it was an hispanic person who attended both dealt transactions and that he did not have a good view of the hispanic person, the certainty of his subsequent description, upon which the government relies in arguing that the evidence was overwhelming, Gov't.'s Br. at 8-9, would likely have been totally undermined.

Given that the case "rose or fell" on the strength of Bradley's testimony, Gov't.'s Br. at 8-9, that the jury was never told about about the Maturano-Rodriguez's exculpatory testimony which undermined the identification by the government's sole witness against petitioner, the absence of any other evidence, the risks inherent in cross-racial identification probably accounts for more miscarriages of justice than any other single factor—[and] perhaps ... is responsible for more such errors than all other factors combined," **Wade,** 388 U.S. at 229 (internal quatoation omitted), concluding that trail counsel's errors seriously undermined the realibility of the jury's verdict.

2. **Counsel Dis Not Adequately Informed Petitioner Of All Possible Plea Options**

Next, petitioner allegd in his original § 2255 petition that his trial counsel, aware that the evidence was overwhelming[1] and that petitioner did not want to cooperate with the government, did not inform petitioner that he could entered either plea bargain or an open plea to both counts of the indictment, likely entitling him to a three-level reduction for acceptance of responsibility. Responding to petitioner's motion to vacate sentence, the Government stated that petitioner's trial counsel "[d]iscussed how a guilty plea would affect his sentencing range, but that he also informed Ortiz-Alcantar, who had not admitted guilt, that he could not enter a guilty plea if he continued to maintain the position that he was not, in fact, guilty. [Gov't. Br. at 9]

The Government's response relied primarily upon a declaration from petitioner's counsel. That declaration corroborates petitioner's position that his trial counsel was ineffective because he failed to inform him of all possible plea options to resolve his criminal case and entitled him to a more favorable sentence. See **United States v. Booth**, 432 F.3d 542, 549 (3rd Cir. 2005)(citation omitted). Here, even with Mr. Bruner's Affidavit, petitioner's petition contains a detailed factual statement clearly setting forth allegations that his trial counsel never informed him that he could enter an open plea. The declaration, however, focuses almost exclusively on the history of a discusiion of a possible sentence [Bruner's Affidavit at 2], rather than the specific allegations in petitioner's petition. In this respect, the declaration is more probative of what it does not address rather than what it does. Id. at 549.

---

[1] In its response, the Government correctly pointed out, as noted by the Eleventh Circuit, testimony at trial established that petitioner (1) was present at the hotel room rented by co-defendant Anibal Gutierrez to facilitate the drug transactions; (2) examined the truck in the hotel parking lot at a point in time where over 850 grams of methamphetamine was secreted in that very area of the vehicle [Gov't. Br. at 8-9]. These events as recited were correct for the first and last time petitioner visited Montgomery as pointed out in Rodriguez's Affidavit. Thus, the subsequent events as pointed out by the government and testified by Bradley were false.

In this case, petitioner raised sufficient allegations that his trial counsel deprived him of the opportunity to make a reasonable informed decision regarding whether to change his plea or proceed to trial because his trial counsel failed to inform him that he could enter an open plea. As a result, petitioner was potentially subject to an increase of 16 to 33 months imprisonment based upon his trial counsel's failure to advise him about all possible plea options. See **Booth**, 432 F.3d at 550; **Glover v. United States**, 531 U.S. 198, 203 (2001)(holding that "any [increase in the] amount of actual jail time" due to Sentencing Guideline errors, constitute prejudice under the **Strickland** doctrine). These allegations, which have not been rebutted by the declaration of petitioner's trial counsel, supporting petitioner's claim. To hold otherwise would, to paraphrase Eliot, render the clear sound of Gideon's trumpet quiet and meaningless as wind in dry grass.

4.  **Counsel Was Ineffective At Sentencing Due to His Failure To Move For A Reduction In Petitioner's Base Offense Level Under § 3B1.2 On The Basis That He Was a Minor Participant**

Petitioner has sufficiently alleged, through of Maturanoe-Rodriguez's Affidavit, and the record albeit incomplete supports at this stage his contention, that he could have been eligible for a § 3B1.2 adjustment and that his counsel failing to present this issue to the district court at sentencing. In response the Government argued, among other things, "[T]he facts presented at trial showed that Ortiz-Alcantar was indeed a drug courier .... Testimony shows that he repeatedly drove from Arizona with Frank Lara to deliver methamphetamine to Alabama. His presence during drug transactions between Frank Lara and Sidney Bradley belie the claim that he was a mere courier." [Gov't. Br. at 10-11]. The government has missed the mark in this claim as well.

Bearing these facts in mind, it was reasonable for defense counsel to attempt, in first instance, to investigate the entire matter to the Maturano-Rodriguez in the hopes of obtaining truthful testimony as was bargained with the government without

fear of repercussion from the government as stipulated in his plea agreement. Thus, counsel's failure to investigate, prepare, and present mitigating evidence at sentencing—even with an anticipated knowledge—not only demonstrated deficient representation but also clearly caused prejudice, denying petitioner, to have a shortened sentence. **United States v. Harfst,** 168 F.3d 398, 404 (11th Cir. 1999). There was evidence that petitioner was mere courier in large enterprise [Gov't. Br. at 10], and if counsel made argument trial court may have granted downward departure and shortened sentence. See id. at 404.

Here, counsel's unprofessional performance denied the court the opportunity to focus on the particular circumstances of petitioner's case. It is possible that petitioner would have received a lesser sentence had his counsel performed competently. Counsel's complete failure to investigate a prospective witness—Maturano-Rodriguez—to present any argument or evidence that might have persuaded the judge to temper the severity of his sentence is sufficient to undermine the confidence in the outcome. **Strickland,** 466 U.S. at 687-88; **Harfst,** 168 F.3d at 404. The government in its response has simply failed to provide sufficient credible evidence to overcome that presumption.

4. **Counsel Was Ineffective At Sentencing Due To His Failure To Investigate, Or To Call Maturano-Rodriguez As A Witness Regarding The Drug Quantity Attributable to Petitioner**

The district court's determination that petitioner was responsible for over 1500 grams of methamphetamine was clearly erroneous. A review of the sentencing hearing transcript reveals that the district court relied on the testimony of Detective Edwards—which at the same time relied on the proffered statement of Maturano-Rodriguez—in determining that over 1500 grams of methamphetamine was a conservative estimate of the amount of drugs involved in the conspiracy. [Sent. Transcript at 13-15].

In its response, the government argues that counsel's failure to contact

9

Maturano-Rodriguez is of no consequence because a reasonable decision not to call him as a witness could have subject petitioner to a greater sentence based on relevant conduct that would be attributable to him. [Gov't. Br. at 12]. In other words, the government speculates that Maturano-Rodriguez could reveal danaging information about petitioner, a danger that outweighted any potential benefit of Maturano-Rodriguez's testimony. This argument unpersuasive. First, it is based upon speculation that is totally unsupported—and is even refuted—by the record. [See Petitioner's § 2255 Exhibit G].

The evidence before this court unequivocally shows that Maturano-Rodriguez never implicated petitioner in any wrongdoing, that Maturano-Rodriguez consistently identified Frank Lara and Anibal Guitierrez as the individuals who made those transactions with him on the past, and that petitioner wanted his counsel to interview Maturano-Rodriguez and call him as a witness at trial and sentencing. Therefore, there is absolutely no support for the government's speculation that Maturano-Rodriguez's testimony would have been damaging to petitioner's defense at sentencing.

Second, even assuming, as the government speculates, that Maturano-Rodriguez cooperation agreement with the United States removed him from the universe of witnesses who would be helpful to Ortiz-Alcantar, Gov't. Br. at 12, counsel could not have evaluated or weighted the risks and benefits of calling Maturano-Rodriguez as a defense witness without so much as asking Maturano-Rodriguez what he would say if called. Without having any contact with Maturano-Rodriguez, counsel "was ill equipped to assess [his] credibility or persuasiveness as a witness," or to evaluate and weigh the risks and benefits of putting him on the stand. **Bryant v. Scott**, 28 F.3d 1411, 1419 (5th Cir. 1994)(citing **Henderson v. Sargent**, 926 F.2d 706, 711 (8th Cir. 1991)); **Wiggins**, 539 U.S. at 527-28.

Indeed, it was objectively unreasonable for counsel to make that decision without first investigating Maturano-Rodriguez, or at least making a reasoned professional judgment that such investigation was unnecessary. See id. ("Although factors tending to diminish [the witness's] credibility might support a strategic decision not to call [him] at trial, those considerations do not suggest that [counsel's] failure to investigate [his] testimony was a strategic decision."); Id. at 527-28.

With regard to **Strickland's** prejudice prong, the record contains ample evidence indicating that but for counsel's ineffectiveness, there is a reasonable probability that petitioner's sentence would have been lesser. Maturanor-Rodriguez has consistently maintained to the police and to others that petitioner was not involved in the previous transactions as testified by Bradley, that the amount of drugs that he transported on October 17, 2003, were less as testified by Detective Edwards, and that he [Maturano-Rodriguez] had been willing to testify to that effect at petitioner trial and sentencing. Had counsel's interviewed Maturano-Rodriguez, he would have discovered as much and probably would have put him on the stand—depending in part upon what other information counsel's investigation uncovered. In short, there is a reasonable probability that had the the judge at sentencing heard Maturano-Rodriguez's testimony, it would have reduced his sentence.

Petitioner's claim of prejudice is further supported by the notable weaknesses in the prosecution's case. [Bruner's Affidavit at 1]. The Supreme Court has explained that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming recond support." **Strickland**, 466 U.S at 696. The only evidence linking petitioner to the crime was the co-conspirator testimony of Bradley and Detective Edwards relying on a supposed proffered statement by Maturano-Rodriguez. See

**Towns v. Smith**, 395 F.3d 251, 260 (6th Cir. 2005). As discussed above, that proffered statement was admittedly tentative and was based solely on Detective Edwards' testimony as to what Maturano-Rodriguez supposedly said at the time of his arrest, however, without any report or recording to sustain its veracity. In light of the relatively scant evidence of petitioner's responsibility of the entire drug quantity as testified by Detective Edwards at sentencing, his counsel's ineffectiveness must be deemed specially prejudicial where the evidence at this time shows otherwise.

## II. AN EVIDENTIARY HEARING IS NECESSARY IN THIS MATTER

The legal claims set forth in this memorandum are based on the evidence which ic available at this time to the government and the petitioner. However, there are factual issues raised by the legal claims which can only be resolved by the testimony of the interested parties. There are also issues raised which may need the testimony of Gelacio Maturano-Rodriguez, the codefendant in this case who knows the facts and the entire circumstances of this case, as well as others who may have been involved in this cause.

Accordingly, some of the legal claims may be modified, or expanded in light of evidence which will be developed through this proceeding.

Section 2255 provides that "[U]nless the motion and files and records of the case conclusively show that petitioner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make finding of fact and conclusions of law with respect thereto." In this case, petitioner has alleged facts which, if proven, entitle him to relief. He is accordingly entitled to an evidentiary hearing.

## III. CONCLUSION

For the foregoing reasons, petitioner has clearly demonstrate that he is entitle to relief from this Court. He respectfully requests that this Court vacate his conviction and sentence because it was entered in reliance on ineffective assistance of counsel in violation of the Sixth Amendment.

The petitioner also requests discovery and an evidentiary hearing to pursue the factual and legal claims set forth in this petition.

Respectfully submitted this 22nd day of May, 2006.

*Sergio Ortiz*
Sergio Ortiz-Alcantar
Reg. 11301-002
P.O. Box 7001/A3A
Taft, California 93268

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 22, 2006, the foregoing petitioner's response to the government's opposition was served upon the Respondent by depositing a copy of it in the U.S. Mail, first class postage prepaid, in the internal mail system located at Taft Institution and addessed to:

Todd A. Brown
Assistant U.S. Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197

By: *Sergio Ortiz*
Sergio Ortiz-Alcantar
Petitioner