IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | Civil Action No. 2:06cv245-WHA |
| | ) | (WO) |
| SERGIO ORTIZ ALCANTAR | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.   INTRODUCTION

This matter is before the court on a motion by federal inmate Sergio Ortiz Alcantar (hereinafter "petitioner") to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  On April 7, 2004, a jury found petitioner guilty of one count of conspiracy to possess with intent to distribute 500 grams or more of methamphetamine and one count of possession with intent to distribute such quantity of methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  Sentence was imposed on June 23, 2004, with petitioner receiving 188 months on each count, the terms to be served concurrently.  Petitioner appealed to the Eleventh Circuit Court of Appeals and, on June 10, 2005, that court affirmed his convictions and sentence.[1]  *United States v. Alcantar*, [No. 04-13399] 134 Fed.Appx. 401

---

[1]On direct appeal, petitioner argued that (i) there was insufficient evidence to sustain his convictions and (ii) his sentence was increased based on judicial fact-finding in violation of his Sixth Amendment rights, as set forth in *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005).  (*See* unpublished Eleventh Circuit opinion, Doc. No. "5-6"/Government Exhibit E.)

(11th Cir. Jun. 10, 2005) (unpublished opinion). Petitioner then petitioned the United States

Supreme Court for a writ of certiorari, which was denied on October 11, 2005. *Alcantar v.*

*United States*, 126 U.S. 470 (2005).

Petitioner filed this § 2255 motion (Doc. No. 1) on March 10, 2006.[2] In his motion,

he claims that he received ineffective assistance of counsel for the following reasons:

1. Counsel failed to conduct a reasonable investigation into his codefendant Gelacio Maturano-Rodriguez and to call Maturano-Rodriguez as a defense witness during trial.

2. Counsel failed to adequately inform petitioner of all possible plea options and the possibility of a more favorable sentence.

3. Counsel failed to argue for a minor-role reduction in petitioner's offense level for sentencing purposes.

4. Counsel failed to consider Maturano-Rodriguez as a defense witness at the sentencing hearing who could effectively rebut the governments's evidence regarding the quantity of drugs attributable to petitioner.

(*See* Doc. Nos. 1 & 2.)

The government answers that petitioner is entitled to no relief because his claims lack

merit. (Doc. No. 5.) Petitioner was afforded an opportunity to respond to the government's

submission and has done so. (Doc. No. 7.) After due consideration of the § 2255 motion,

the submissions supporting and opposing the motion, and the record in this case, the court

---

[2]Although the motion was date-stamped "received" in this court on March 17, 2006, under the "mailbox rule," the court deems it filed on the date petitioner delivered it to prison authorities for mailing, presumptively, March 10, 2006, the day that he signed it. *See Houston v. Lack*, 487 U.S. 266, 271-72 (1988); *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).

concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, the motion should be denied.

## II.   DISCUSSION

**A.     Standard of Review for Ineffective Assistance of Counsel**

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial.  To succeed on a claim of ineffective assistance of counsel, a movant must satisfy both prongs of the test set  by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  The *performance* prong requires a movant to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel guaranteed by the Sixth Amendment.  *Id*. at 687-89.  The *prejudice* prong requires a movant to demonstrate that seriously deficient performance of his counsel prejudiced the defense.  *Id*. at 687.

Under the performance component of the *Strickland* inquiry, a movant must establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."  *Id*.  In other words, criminal defendants have a Sixth Amendment right to "reasonably effective" legal assistance.  *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland*, 466 U.S. at 687).

Under the prejudice component of *Strickland*, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice component of *Strickland* focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Id*. at 687. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).

Unless a movant satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697 (A court need not "address both components of the inquiry if the [movant] makes an insufficient showing on one."); *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998) ("if a defendant cannot satisfy the prejudice prong, the court need not address the performance prong").

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally,

4

only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

**B.    Ineffective Assistance Claims**

    ***1.    Failure to Conduct Reasonable Investigation of Gelacio Maturano-Rodriguez and to Call Maturano-Rodriguez as Defense Witness During Trial***

Petitioner contends that his counsel rendered ineffective assistance by failing to "conduct a reasonable investigation into" his codefendant Gelacio Maturano-Rodriguez and by "failing to call [Maturano-Rodriguez] as a defense witness to confront the government's witness [Sidney Brian] Bradley" during trial. (Doc. No. 2 at 11; *see* Doc. No. 2 at 3-5 & 11-14.)

Bradley, a cooperating witness for the government, testified that in the early part of 2003, he and his associate Ryan Buckner bought a substantial amount of methamphetamine from petitioner and Frank Lara during two transactions that took place at the Montgomery, Alabama, residence of Anibal Gutierrez. (*See* Trial Transcript ["Tr."] at 116-27.) Gutierrez had sometime earlier approached Bradley to tell him that he had a connection in Arizona (Lara) who could supply him with methamphetamine "pretty cheap." (Tr. at 117.) In open court, Bradley identified petitioner as the person who, together with Lara, sold him and Buckner over a pound and a half of methamphetamine at Gutierrez's residence for a total of approximately $15,200. (Tr. at 126-27.)

Bradley further testified that he and Buckner met with Lara at a motel in Montgomery on a later occasion to make arrangements for more methamphetamine buys. (Tr. at 126.) There, said Bradley, Buckner informed Lara that he wanted to purchase two pounds of methamphetamine every two weeks. (*Id*.) According to Bradley, Lara agreed to this arrangement, telling Buckner that he would not personally make the deliveries, but that petitioner and another man would drive from Arizona to Montgomery with the drugs. (Tr. 126-28, 132-33.)

Petitioner was arrested with Maturano-Rodriguez at a motel in Montgomery on the evening of October 8, 2003, after officers executed a warrant to search their room, which, testimony revealed, had been paid for that morning by Gutierrez.[3] (Tr. at 44-45.) Investigators had received information that Lara would be arriving in Montgomery that day to deliver multiple pounds of methamphetamine to Gutierrez.[4] (Tr. at 33.) Prior to the search, officers located Lara's truck, with Arizona licence plates,[5] in the parking lot of the motel where petitioner and Maturano-Rodriguez were apprehended. (*See* Tr. at 34, 43-48.) The desk clerk at the motel told officers that after Gutierrez had paid for a room that

---

[3]Evidence indicated that Gutierrez would rent rooms at the motel to facilitate the methamphetamine ring's drug transactions. (*See* Tr. at 43-48.)

[4]Law enforcement was already aware from other federal arrests and prosecutions that Lara was a methamphetamine distributor and that Gutierrez was affiliated with him in such activities.

[5]The truck was actually registered to Lara's mother, who had the same Arizona address as Lara; however, investigators knew it to be a vehicle used by Lara in transporting drugs from Arizona to Montgomery. (*See* Tr. at 30-34, 43-48.)

6

morning, he saw Gutierrez, Maturano-Rodriguez, and petitioner looking under the hood of the truck.  (Tr. at 99-01.)  A subsequent search of the truck by officers revealed two bundles of methamphetamine totaling over 850 grams in a hollowed-out compartment under the hood, between the engine area and the truck's exterior.  (Tr. at 49-50, 80.)  Inside the truck, officers also found a traffic warning that had been issued to Maturano-Rodriguez by the Oklahoma Department of Public Safety on Interstate 40, dated October 7, 2003.  (Tr. at 54.)

In his § 2255 motion, petitioner describes Maturano-Rodriguez as "a known and potentially important witness" who, but for his counsel's ineffectiveness, could have countered Bradley's testimony that petitioner took part in the methamphetamine sales that occurred at Gutierrez's Montgomery residence earlier in 2003 and that petitioner was a participant in the conspiracy to distribute methamphetamine.  (*See* Doc. No. 2 at 11-12.)  In support of this claim, petitioner attaches to his motion an affidavit purportedly executed by Maturano-Rodriguez in January 2006.  (*See* Maturano-Rodriguez affidavit, Doc. No. "2-5"/Petitioner's Exhibit D.)  In the affidavit, Maturano-Rodriguez avers, in pertinent part, as follows:

> -that during the course of the conspiracy, he drove from Arizona to Montgomery on three occasions, including October 7, 2003, carrying methamphetamine to Lara;
>
> -that on one of those occasions, while in Montgomery, he accompanied Lara to meet "a couple of individuals" for the purpose of making a methamphetamine transaction;
>
> -that on October 7, 2003, he invited petitioner to accompany him from Arizona (in Lara's truck) to pick up a car in North Carolina, telling petitioner that,

7

before driving to North Carolina, he needed to make a stop in Montgomery;

-that only he – and not petitioner – knew that the actual purpose of the stop in Montgomery was to deliver methamphetamine;

-that October 7, 2003, was the first time petitioner visited Montgomery; and

-that at the time of his arrest on October 8, 2003, he gave Drug Task Force Agent Scott Edwards a statement about the amount of drugs that he transported on the trip, telling Edwards that in addition to the two pounds of methamphetamine found in Lara's truck, he had brought another pound of methamphetamine, which he had distributed to Gutierrez on October 7, 2003.

(Doc. No. "2-5"/Petitioner's Exhibit D at 1-2.)

According to petitioner, calling Maturano-Rodriguez as a defense witness to "confront" Bradley at trial could have been especially beneficial, not only because Maturano-Rodriguez would have provided exculpatory testimony on petitioner's behalf, but because Bradley's identification of petitioner was particularly unreliable, as it involved the "cross-racial identification" of an Hispanic individual by a non-Hispanic. (*See* Doc. No. 2 at 10-14.) In this regard, petitioner suggests that Bradley (who is not Hispanic) mistook petitioner for Maturano-Rodriguez (who, like petitioner, is Hispanic) as the person who, with Lara, had sold methamphetamine to Bradley and Buckner at Gutierrez's residence in Montgomery in 2003. (*Id.*) Thus, petitioner argues that Maturano-Rodriguez could have established petitioner's innocence as to any involvement in the drug conspiracy.

Addressing this issue in an affidavit filed with the court, petitioner's trial counsel, Ben E. Bruner, avers that, prior to trial, he did in fact discuss calling Maturano-Rodriguez with Maturano-Rodriguez's attorney and that although his original account of events seemed

8

favorable to petitioner, he later entered a plea agreement that produced a version of events damaging to his own and petitioner's interests.[6]  (*See* Bruner affidavit, Doc. No. "5-8"/Government Exhibit G at 1-2.)  Maturano-Rodriguez stood to lose the benefit of his plea agreement, and be subject to obstruction of justice charges, if he made statements favorable to petitioner at a trial if petitioner lost.  (*Id*.)  According to Bruner, this possibility resulted in a mutual decision by himself and petitioner not to call Maturano-Rodriguez as a witness at petitioner's trial.[7]  (*Id*.)

Considering all the circumstances, counsel made reasonable decisions not to pursue additional investigation into Maturano-Rodriguez's viability as a defense witness and not to call Maturano-Rodriguez to testify.  Counsel had reason to believe that Maturano-Rodriguez would not provide testimony helpful to petitioner.  Petitioner points to no facts reasonably available to counsel at the time of trial that might have suggested that further investigation

---

[6]Maturano-Rodriguez, who was one of several codefendants charged along with petitioner, pled guilty to conspiracy to distribute methamphetamine (Count 1 of the indictment) pursuant to a plea agreement on March 5, 2004, one month prior to petitioner's trial.  (*See* Maturano-Rodriguez plea agreement, Doc. No. "5-7"/Government Exhibit F.)  The plea agreement required Maturano-Rodriguez to cooperate fully with the government, by providing truthful information on all matters related to the offense, or else face prosecution for perjury, false statements, and/or obstruction of justice.  (*Id*. at 5-7.)  In January 2005, before Maturano-Rodriguez's sentencing, the government filed a Notice of Violation of Plea Agreement, alleging that Maturano-Rodriguez had breached the plea agreement by providing the Probation Office with false information concerning his identity during the presentence investigation process.  (*See* Criminal Case No. 2:03cr-231-WHA, Doc. No. 249.)  As a result of the false information provided by Maturano-Rodriguez, the government had elected not to call him as a witness at his codefendants' trial.  (*Id*. at 1.)  In addition, the government declined to file any motion for downward departure on Maturano-Rodriguez's behalf.  (*Id*.)

[7]*See* Bruner affidavit, Doc. No. "5-8"/Government Exhibit G at 2 (Bruner states, "I, with Mr. Alcantar's approval, did not seek to call Maturano.").

of Maturano-Rodriguez would have proved beneficial to petitioner's defense or that Maturano-Rodriguez would indeed have provided testimony helpful to petitioner. Maturano-Rodriguez's affidavit was executed more than a year after petitioner's trial and after Maturano-Rodriguez and petitioner had both been convicted and sentenced. Petitioner does not allege that he ever informed counsel prior to trial of any of the matters asserted by Maturano-Rodriguez in his affidavit, including the specific claim that petitioner accompanied Maturano-Rodriguez from Arizona to Montgomery in October 2003 only because he believed they were going to North Carolina to pick up a car. (Petitioner does not dispute counsel's contention that petitioner specifically approved of the decision not to present Maturano-Rodriguez as a defense witness.) Nor is there any indication that Maturano-Rodriguez himself, at the time of petitioner's trial, ever evidenced a willingness to provide testify on petitioner's behalf that corresponded to the substance of his affidavit. Thus, petitioner has failed to demonstrate that his counsel's performance in this regard was professionally unreasonable. *Strickland*, 466 U.S. at 688.

Furthermore, petitioner fails to meet his burden of showing that the testimony of Maturano-Rodriguez was reasonably likely to have changed the outcome of the proceedings. In addition to Bradley's testimony that he bought a substantial amount of methamphetamine from petitioner and Lara on two occasions and that he overheard Lara telling Buckner that petitioner would be one of the people driving the drugs from Arizona to Montgomery, there was evidence establishing that petitioner was arrested at the motel room rented by Gutierrez

to facilitate the drug transactions and that petitioner was seen examining an area of the truck in the motel parking lot where approximately 850 grams of methamphetamine was secreted. Thus, as the government maintains, petitioner has not shown that the testimony of Maturano-Rodriguez – even if it were to mirror that of his affidavit – was likely to overcome the evidence of petitioner's guilt that was presented at trial. (*See* Doc. No. 5 at 9.) Therefore, petitioner has failed to demonstrate the necessary prejudice required under *Strickland*.

Because this court concludes that petitioner has failed to show that his counsel's performance was objectively unreasonable and prejudiced his case, petitioner is entitled to no relief based on this claim. *Strickland*, 466 U.S. at 687-89.

### 2.    *Failure to Adequately Inform of Possible Plea Options*

Petitioner next asserts that his counsel failed to adequately inform him of all possible plea options and the possibility of a more favorable sentence by pleading guilty. (Doc. No. 2 at 5-6.) In this regard, petitioner argues:

> Assuming that petitioner [if pleading guilty] would have received a three-level reduction for acceptance of responsibility, he would have been subject to a guideline range of 135 to 168 months. Because petitioner was actually sentenced to 188 months' imprisonment, he arguably received a sentence of 20 to 50 months greater than what he would have received had he entered on a plea agreement to counts one and two.

(Doc. No. 2 at 5.)

Petitioner's allegation that he was not informed of his plea options is rebutted by the declaration of his counsel, who avers in his affidavit as follows:

11

Alcantar argues that I didn't discuss plea options with him. I did in fact go over what he was looking at with the sentencing guidelines with a translator present and discussed what he would get if he pled guilty with and without a plea. I did this because of the huge penalty he was facing[;] however, he never once admitted he was guilty to me. I told him that he could not tell me that he wasn't guilty and enter a plea of guilty, that the judge would not accept it if he told the judge he just wanted to plead but he wasn't guilty.

(Bruner affidavit, Doc. No. "5-8"/Government Exhibit G at 2.)

Weighing the bare allegations in petitioner's § 2255 motion against the sworn testimony of counsel, the court finds that counsel adequately advised petitioner of his plea options; consequently, petitioner fails to establish that his counsel's performance in this regard fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-89.

Moreover, petitioner fails to demonstrate that he was prejudiced by any alleged failure by his counsel to fully inform him of his plea options. In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court held that the *Strickland* standard applies to advice given by counsel in the context of guilty plea discussions. *See Hill*, 474 at 57-58. The Court stated that the prejudice prong in the context of the plea process "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id*. at 59. Thus, under the prejudice prong, petitioner must demonstrate that, but for his counsel's alleged ineffectiveness, he would have chosen not to go to trial, would have plead guilty, and would likely have received a lower sentence.

Petitioner hinges his claim for relief on the assumption that, by pleading guilty, he would have received a three-level reduction for acceptance of responsibility under the

12

Sentencing Guidelines.[8]  However, his argument that he would have been granted such a reduction under the circumstances is entirely speculative and is further undermined by the fact that he has at all times maintained his innocence of the charges.  Moreover, petitioner neither demonstrates nor specifically alleges that, had counsel fully advised him of all plea options, he would have chosen not to go to trial and would have insisted on pleading guilty. Therefore, he fails to establish the requisite prejudice to sustain a claim of ineffective assistance of counsel.  *See Hill*, 474 at 60 (holding that because petitioner failed to allege that counsel's allegedly erroneous advice determined petitioner's decision whether or not to plead guilty, petitioner failed to allege the kind of "prejudice" necessary to satisfy the second half of the *Strickland* test, and the district court was not required to hold a hearing on petitioner's claim of ineffective assistance of counsel).  Consequently, this court concludes that petitioner's claim of ineffective assistance of counsel does not entitle him to any relief.

---

[8]Section 3E1.1 of the Sentencing Guidelines provides:

(a)    If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by **2** levels.

(b)    If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by **1** additional level.

U.S.S.G. § 3E1.1.

*3.    Failure to Seek Minor-Role Adjustment*

Petitioner contends that his counsel was ineffective for failing to seek a two-point reduction of his offense level based on his allegedly minor role in the offense. (*See* Doc. No. 2 at 6 & 15-16.) According to petitioner, at most the evidence showed that he was a "mere courier" in the drug-distribution ring, less culpable than the average participant, entitling him, he says, to a sentence reduction pursuant to U.S.S.G. § 3B1.2(b). (Doc. No. 2 at 15.)

Under U.S.S.G. § 3B1.2(b), a defendant qualifies for a two-level reduction to his offense level if he was a minor participant in the offense. U.S.S.G. § 3B1.2(b). The Sentencing Guidelines define a minor participant as one "who is less culpable than most other participants, but whose role could not be described as minimal." *Id.*, comment. (n.5).

The Eleventh Circuit has recognized that

> courier status in and of itself is not dispositive of whether a defendant is entitled to or precluded from receiving a downward adjustment for role in the offense. [*United States v. Veloza*,] 83 F.3d [380,] at 382 [(11th Cir. 1996)]. Simply put, the drug courier may or may not qualify for a minor role reduction. *See, e.g., United States v. Cacho*, 951 F.2d 308, 309-10 (11th Cir. 1992) ("Although [defendant] was a courier who carried the drugs into the United States, that fact alone does not establish that she was either a minimal or minor participant in the conspiracy."); *Smith* [*v. United States*], 918 F.2d [1551] at 1566 [(11th Cir. 1990)] ("[A] drug courier is not necessarily a minor or minimal participant within the meaning of the Sentencing Guidelines."). Having posited this unremarkable proposition, however, it is perfectly legitimate for a district court to consider *any* fact related to a defendant's conduct as a courier in an importation scheme, including her status and assigned tasks in that scheme. Indeed, in many drug courier cases these are the *only* discernable facts. Therefore, when a drug courier's relevant conduct is limited to her own act of importation, a district court may legitimately conclude that the courier played an important or essential role in the importation of those drugs. This is permissible even though facts related to the defendant's status as a drug

14

courier form the basis for this determination. We do not create a presumption that drug couriers are never minor or minimal participants, any more than that they are always minor or minimal. Rather, we hold only that the district court must assess all of the facts probative of the defendant's role in her relevant conduct in evaluating the defendant's role in the offense.

We further note, in the drug courier context, that the amount of drugs imported is a material consideration in assessing a defendant's role in her relevant conduct. *See* [*United States v.*] *Asseff*, 917 F.2d [502] at 507 [11th Cir. 1990)] ("It is evident that [the defendants'] conduct does not warrant a downward adjustment in sentencing because of their apparent knowledge of their criminal activity and the great amount of cocaine involved."); *see also* [*United States v.*] *Webster*, 996 F.2d [209] at 212 n.5 [(9th Cir. 1993) (per curiam)] (recognizing that "the amount of contraband may be relevant to whether a defendant is a minor participant"). Indeed, because the amount of drugs in a courier's possession – whether very large or very small – may be the best indication of the magnitude of the courier's participation in the criminal enterprise, we do not foreclose the possibility that amount of drugs may be dispositive – in and of itself – in the extreme case. *See, e.g., United States v. Carrazco*, 91 F.3d 65, 67 (8th Cir. 1996) (holding that when defendant is "apprehended in possession of a very substantial amount of drugs," that is "a circumstance that tends to suggest that his participation in the criminal enterprise was itself very substantial"); *United States v. Lui*, 941 F.2d 844, 849 (9th Cir. 1991) ("[W]e have recognized that possession of a substantial amount of narcotics is grounds for refusing to grant a sentence reduction."); *United States v. Garvey*, 905 F.2d 1144, 1146 (8th Cir. 1990) (per curiam) (recognizing that district court may refuse "to grant a minor and/or minimal participant reduction based solely on the significant amount of drugs involved").

*United States v. De Varon*, 175 F.3d 930, 942-43 (11th Cir. 1999).

For a sentencing court to determine whether to grant a minor-role reduction, it considers two principles. *See De Varon*, 175 F.3d at 940. First, the court must measure the defendant's role against the relevant conduct for which he is being held accountable. *Id*. "Only if the defendant can establish that [he] played a relatively minor role in the conduct

15

for which [he] has already been held accountable – not a minor role in any larger criminal conspiracy – should the district court grant" a minor-role reduction. *Id*. at 944.  The second prong of the minor-role reduction analysis permits a district court, "where the record evidence is sufficient ...[, to] measure the defendant's conduct against that of other participants in the criminal scheme attributed to the defendant." *Id*. at 934.

The trial court held petitioner accountable for 1700 grams of methamphetamine.  This amount was based on Officer Scott Edwards's testimony at sentencing that, shortly after his arrest, Maturano-Rodriguez had told him that, in addition to the 850 grams of methamphetamine officers discovered in the search of the truck on October 8, 2003, another 850 grams of the drug had also been transported in the truck on the same trip and had been distributed to Gutierrez earlier that day.[9]  (*See* Sentencing Hearing at 12-15.)  Based on the finding that petitioner was therefore responsible for a total of 1700 grams of methamphetamine that he and Maturano-Rodriguez transported from Arizona, the trial court set petitioner's base offense level at 34.  (Sentencing Hearing at 15.)  Thus, Petitioner's base offense level was based entirely on a quantity of drugs over which he had constructive possession and which he personally helped transport from Arizona to Montgomery.  No other drug quantities or upward adjustments were factored into petitioner's offense level.  Consequently, based on the close convergence between petitioner's conduct and the conduct

---

[9]The court found Maturano-Rodriguez's statement to Officer Edwards to be credible, as it came from the "person who had just been picked up for this offense along with the [petitioner]." (*See* Sentencing Hearing at 14.)

16

for which he was held accountable, he has failed to meet the burden of the first prong in the minor-role reduction analysis. *See De Varon*, 175 F.3d at 940.

Petitioner's claim also fails under the second prong of this analysis. Evidence indicated that, as part of the conspiracy, petitioner made several trips from Arizona to Montgomery with shipments of methamphetamine. Moreover, there was testimony that petitioner, with Lara, sold Bradley and Buckner over a pound and a half of methamphetamine in the early part of 2003 for approximately $15,200. Finally, in October 2003, petitioner, with Maturano-Rodriguez, transported 1700 grams (approximately four pounds) of methamphetamine from Arizona to Montgomery. Thus, the evidence tended to show that petitioner was a significant participant in the enterprise, who understood its scope and structure as fully as any member of the conspiracy.

Accordingly, for the reasons indicated above, this court concludes that petitioner has failed to demonstrate that his counsel's failure to argue that he was entitled to a minor-role reduction in his offense level was objectively unreasonable and prejudiced his case. *Strickland*, 466 U.S. at 687-89. Petitioner is not entitled to any relief based on this claim.

### 4.    *Failure to Use Maturano-Rodriguez as Defense Witness at Sentencing*

Petitioner argues that his counsel rendered ineffective assistance by failing to consider Maturano-Rodriguez as a defense witness at the sentencing hearing who could effectively rebut the governments's evidence regarding the amount of methamphetamine attributable to

17

petitioner.  (Doc. No. 2 at 6-7 & 17-20.)

In support of this claim, petitioner again relies on the averments of Maturano-Rodriguez in the affidavit executed in January 2006, particularly Maturano-Rodriguez's assertion that, after his arrest in October 2003, he told Officer Scott Edwards that he had transported a total of three pounds of methamphetamine on the trip from Arizona. As noted above, Officer Edwards testified at petitioner's sentencing that Maturano-Rodriguez told him that he and petitioner had transported a total of four pounds (1700 grams) of methamphetamine on the trip.  According to petitioner, Maturano-Rodriguez could have provided testimony at petitioner's sentencing hearing matching the averments of his subsequent affidavit, which, if believed by the court, could have reduced the quantity of methamphetamine attributed to petitioner, resulting in a lower sentence.  (*See* Doc. No. 2 at 17-20.)

Addressing this claim, petitioner's counsel states:

I did not call Maturano at the sentencing either because Maturano had given a statement which was detrimental not only to my client's sentencing, but to his (Maturano's).  The same weight of drugs applied to Alcantar would be applied to Maturano.  Calling Maturano for assistance at that time seemed to be of no use as he was the person putting the weight on not only my client but himself.  The probation office would put the same weight on both pursuant to relevant conduct.

(Bruner affidavit, Doc. No. "5-8"/Government Exhibit G at 2.)

As is the case with petitioner's claim concerning counsel's failure to call Maturano-Rodriguez to testify at trial, petitioner points to no facts reasonably available to counsel at

18

the time of sentencing that might have suggested that Maturano-Rodriguez would indeed have provided testimony beneficial to petitioner at his sentencing hearing.  Certainly there is no indication that Maturano-Rodriguez, prior to petitioner's sentencing, ever evidenced a willingness to provide testimony that corresponded to his subsequent statements in his affidavit regarding the quantity of methamphetamine transported to Montgomery in the October 2003 trip from Arizona.  Under the circumstances, this court cannot say that counsel's decision not to use Maturano-Rodriguez as a defense witness at petitioner's sentencing was professionally unreasonable.  *Strickland*, 466 U.S. at 688.  Moreover, testimony by Matruano-Rodriguez at petitioner's sentencing that three – and not four – pounds of methamphetamine were transported on the trip would only have created a conflict with Officer Edwards's testimony that Maturano-Rodriguez had told him that the amount was four pounds.  The trial court found Maturano-Rodriguez's statement to Officer Edwards to be especially reliable because it was a statement against his interests, made shortly after his arrest, when he had less time to devise calculated answers to questions by law enforcement. (*See* Sentencing Hearing at 14.)  Petitioner does not demonstrate that testimony from Maturano-Rodriguez that conflicted with his statement to Officer Edward was reasonably likely to have changed the outcome of petitioner's sentencing proceedings.  Therefore, petitioner also fails to demonstrate the necessary prejudice required under *Strickland*.

Because petitioner has failed to show that his counsel's performance in this regard was

objectively unreasonable and prejudiced his case, he is entitled to no relief based on this claim. *Strickland*, 466 U.S. at 687-89.

## III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by petitioner be denied, as the claims therein entitle him to no relief.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before January 3, 2008.   A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 21st day of December, 2007.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

20